[Criminal No. 836.   Filed June 22, 1936.]

[58 Pac. (2d) 1037.]

J. W. GIBBS, Appellant, v. STATE OF ARIZONA, Appellee.

Mr. Hess Seaman, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for Appellee.

LOCKWOOD, C. J.—This is an appeal from a judgment on a verdict of manslaughter. The material facts disclosed by the evidence, construed as strongly as it can reasonably be considered in support of the verdict, may be stated as follows:

About sundown on the 24th day of June, 1935, J. W. Gibbs, hereinafter called defendant, was discovered by Paul Gass standing beside his automobile on Osborne Road, between Seventh and Nineteenth Avenues. The car was facing west, and beside it lay one Amos Remington, face down and unconscious. Defendant was quite drunk at the time. Gass notified the sheriff's office, and shortly thereafter two deputy sheriffs arrived on the scene, together with an ambulance. Remington was taken to St. Joseph's Hospital, where he died two days later shortly following an operation, never having regained consciousness. The cause of his death, as testified to by two medical witnesses, was a basal skull fracture, which caused an injury to the brain. Defendant was taken to the sheriff's office, and while on his way there stated to the deputies that he had run over Remington, striking him with the right side of the car. This, in substance, was the situation as developed by the state's case in chief.

It was the theory of the state that defendant was operating the automobile while in an intoxicated condition, and while so doing had struck deceased, hurling him to the ground and causing the skull fracture which resulted in his death.

Defendant testified in his own behalf at the trial, and stated, in substance, that as he was driving west facing the sun the evening of the accident, his car ran over something lying in the road. He looked back and saw the body of Remington, went back and

picked him up and put him in his car, intending to take him to a doctor, but within a few minutes Remington wanted to get out of the car, so he stopped where the officers found him, and Remington alighted, and then fell to the ground. Two doctors testified, in substance, that they found no marks of injuries of any importance upon the body of the deceased, except a bruise on the right side of the head over the occipital region at the back of the head and extending up over the right ear which looked as though gravel or something of that kind had been mashed into the bruise. They also testified that the wound was caused by a blunt, as distinct from a sharp, instrument, and could have been produced by a sandbag or a bag full of shot. There was, however, no evidence of any nature indicating that it had actually been so produced. It is the theory of defendant, apparently, that Remington had been knocked to the ground in some manner before defendant appeared upon the scene, and that the latter's car merely ran over his prone body and inflicted no injury upon him. There was a considerable amount of other testimony, but it is unnecessary that we set it forth except as we may find it necessary hereinafter to refer to specific portions thereof.

There are five assignments of error which we shall consider in their order. The first and second assignments raise the question of whether there was sufficient evidence to sustain the allegations of the information. The information charges, in substance, that defendant, while operating an automobile upon the public highways, without due caution and circumspection, and while under the influence of intoxicating liquor, carelessly and negligently drove the automobile against the body of Remington, thereby inflicting upon the latter serious injuries from which

he died.    The law of Arizona makes it a misdemeanor for any person to drive an automobile on the public highway while under the influence of intoxicating liquor.    Section 1688, Rev. Code 1928 (as amended by Laws 1935, chap. 33, § 1).    Manslaughter is defined by our law as follows:

"Manslaughter is the unlawful killing of a human being without malice.  It is of two kinds: Voluntary, upon a sudden quarrel or heat of passion; involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."   Section 4586, Rev. Code 1928.

If, therefore, defendant was driving an automobile upon the highways, while under the influence of intoxicating liquor, and while so doing ran into Remington in such a manner that the blow inflicted by the automobile was the proximate cause of the injury which caused Remington's death, he would be guilty of involuntary manslaughter.    That defendant was driving the automobile that evening on a public highway while intoxicated, appears clearly in the record, both from his own testimony and that of the state's witnesses; that he struck the deceased with his automobile appears both from his statement to the deputy sheriff the evening when he was arrested, and from his testimony upon the stand.    But whether or not the collision between the automobile and the deceased was the proximate cause of the basal fracture of the skull is the disputed issue of fact.

Defendant's theory is that Remington was already lying on the ground as the result of an injury inflicted by some other person, and that the right wheel of the automobile passed over his body, but did not cause the fractured skull.    There is nothing to sus-

tain this theory but defendant's own statement and the statements of the two medical witnesses that the skull fracture might have been caused by the impact of some soft blunt instrument, like a sandbag. There is not a scintilla of evidence, however, that Remington was ever struck by anything except by the automobile.

It is the theory of the state that Remington was struck by the automobile and hurled to the ground with such force that his skull was fractured by the impact with the road. This theory is supported to some extent by the testimony of the medical witnesses that the bruise on Remington's head looked as though gravel, or something of that kind, had been mashed into the skull. It is urged that since it is admitted there were no other bruises or marks of contusions found upon the body, Remington could not have been struck by the car and knocked down, but we think this is not necessarily true. A man, walking along the road, may receive a glancing blow from the fender of a rapidly moving automobile in such a manner as to throw him off balance and hurl him to the ground without bruises being left on his body resulting directly from the contact with the automobile.

■■ The jury is the sole judge, not only of the truth of the facts testified to, but of the reasonable inferences to be drawn therefrom. *Grabe* v. *Industrial Com.*, 38 Ariz. 322, 299 Pac. 1031; *Moeur* v. *Farm Builders Corp.*, 35 Ariz. 130, 274 Pac. 1043; *First Nat. Bank* v. *Osborne*, 39 Ariz. 107, 4 Pac. (2d) 384. And we think it was not unreasonable for it to draw the conclusion from the evidence that the contact with the automobile caused Remington to fall and fracture his skull. That this inference was actually drawn is clear. We think, therefore, the evidence is sufficient to sustain the verdict.

■ We consider next the third assignment of error. This is the giving of certain instructions. The first of these instructions reads as follows:

"Now, gentlemen, I instruct you that it is necessary for the State of Arizona to convince your minds beyond a reasonable doubt as to the truth of this charge before you can find the defendant guilty. In this connection, gentlemen, I further instruct you that if the State of Arizona has satisfied your minds beyond a reasonable doubt that the defendant drove an automobile on the public highway without due caution and circumspection, and he inflicted injuries upon the body of the deceased from which the deceased died, and *the death was the proximate cause of the operation of the automobile,* then, gentlemen, I instruct you that you should return a verdict of guilty." (Italics ours.)

Three other instructions were given which were correct in all respects except that they contained substantially the same phrase as that italicized by us above. It is urged that this was an incorrect statement of the law of proximate cause. That is, of course, true. It is an absurdity to even imagine that the death of Remington was, or could have been, the proximate cause of the defendant operating the automobile while drunk. It is obvious that what the court meant to say was not that the "death was the proximate cause of the operation of the automobile" but that "the operation of the automobile was the proximate cause of the death." We think this is so clear that each and every member of the jury must have realized that, as frequently happens in the giving of long and complicated instructions, the court, to use the familiar phrase "got the cart before the horse." There are some errors that are so absurd that it is obvious they could not have misled an intelligent child, and under article 6, section 22, of the Constitution, it is our duty to disregard errors of

this nature if we feel, upon the whole record, that substantial justice has been done. We hold, therefore, that the inadvertent transposition of words made by the trial court, although of course error, should not, under the constitutional provision, cause a reversal of the case.

The fourth assignment of error is that the court refused to give the following instruction:

"You are further instructed that if you believe from the evidence that the death of deceased was caused by any other means than being run into by defendant's automobile, you should return a verdict of not guilty, *that is to say, if you believe deceased was struck over the head by some instrument and that such blow was the cause of his death, and that the injury sustained by the deceased was not caused by his being run into by an automobile driven by defendant,* then your verdict should be not guilty." (Italics ours.)

The court eliminated from the instruction as requested the italicized portion, and gave the instruction as modified. There was not a scintilla of direct evidence indicating that the deceased had been struck over the head by any instrument. The only thing which might have given rise to an inference of that nature was the testimony of the medical witnesses that the wound was of such a character that it *could* have been produced by an instrument of that class. We think the court went as far as it was justified in doing under the evidence in giving so much of the instruction as it did, and was not in error in eliminating the part which it refused to give.

The fifth assignment of error is that the court refused to allow the witness Meiers to testify as to what, in his opinion, caused the injury to deceased's head. Objection was made to the question on the ground that the answer would be merely an expres-

sion of opinion on the part of a witness who was not qualified as an expert. Counsel for the defendant avowed that if the witness were permitted to testify he would say that it was his opinion that the wound had been caused by a blow from a blackjack or sandbag or bag full of shot. The court asked the witness, in the absence of the jury, "What I am getting at, from your examination of that wound, could you tell or have you an opinion at this time as to what caused that wound?" and the witness answered, "No sir, I do not; I don't know." The court then sustained the objection, and, we think, properly so, for regardless of whether the witness could have qualified as an expert, he stated specifically he had no opinion on the subject. This concludes the assignments of error.

The defendant was found guilty of involuntary manslaughter. The evidence was of such a nature that the jury was justified in reaching that conclusion. There was but one error committed and that was of such a nature that no jury could possibly have been misled thereby. We feel that on the whole case, the record shows affirmatively that justice has been done. While it is a serious thing that a defendant should be compelled to serve a term in the penitentiary for a homicide which was involuntary on his part, it is also true, in view of the appalling increase of accidents and fatalities caused by the reckless driving of the high-powered automobile of to-day, that when a man drives such a vehicle upon the highway in the condition in which defendant admits he was, that he should be held responsible, even criminally, for a death caused thereby regardless of any evil intention of his. Such is the law of Arizona, and the jury has found the defendant has violated that law.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.