681 P.2d 368

**David M. JONES and Cynthia Louis Jones, Plaintiffs-Appellants,**

v.

**John MUNN and Theresa Marie Munn, husband and wife, Defendants-Appellees.**

**No. 17055–PR.**

Supreme Court of Arizona, En Banc.

April 9, 1984.

Hofmann, Salcito, Stevens & Myers by Leroy W. Hofmann, Phoenix, for plaintiffs-appellants.

Sorenson, Moore, Benham, Garrett & Julian by Theodore A. Julian and John S. Schaper, Phoenix, for defendants-appellees.

HAYS, Justice.

On March 1, 1975, an automobile driven by Theresa Munn collided with an automobile driven by Cynthia Jones; there were no passengers in either car. Jones suffered serious and permanent bodily injury. Jones sued Munn, but the jury found Munn was not liable.

Jones appealed to the court of appeals raising two issues. First, whether the trial court committed reversible error in giving the sudden emergency instruction for the benefit of Munn. Second, whether the trial court improperly commented on the evidence. The court of appeals held that giving the sudden emergency instruction was reversible error; the court of appeals relied on *Woods v. Harker*, 22 Ariz.App. 83, 523 P.2d 1320 (1974), to support its result. The court of appeals also concluded that the trial court improperly commented on the evidence. The court of appeals reversed the case and remanded it for trial. We accepted Munn's petition for review on both issues. We have jurisdiction pursuant to A.R.S. § 12–120.24, and 17A A.R.S., Rules of Civil Appellate Procedure, rule 23.

The record reveals that Munn was traveling south on Greenfield Road. Jones was traveling north on Greenfield Road. As Munn approached the intersection of University and Greenfield Roads she noticed the traffic light was green.

Munn testified she saw Jones' automobile twice. The first time was when Jones'

automobile was on Greenfield heading north. The second time was at the moment of impact. Munn testified she did not at any time see Jones' automobile in her lane of traffic. Jones has no recollection of the accident.

Expert testimony established that Jones negligently turned left off of Greenfield and onto University. In so turning, her automobile momentarily occupied Munn's lane of traffic. Munn veered to the right without braking. Even though Munn testified she did not see Jones' automobile in her lane of traffic, the experts both testified that their reconstruction of the accident showed that Munn perceived the peril and her conduct (veering to the right) was a reaction to the presence of Jones' automobile in Munn's lane of traffic. Additional facts will be discussed as necessary.

## SUDDEN EMERGENCY

■ The sudden emergency doctrine is designed to aid the factfinder "in determining the presence or absence of negligence ...." *Fulton v. Johannsen*, 3 Ariz.App. 562, 565, 416 P.2d 983, 986 (1966). The instruction is meant to inform the jury that the standard of care for an individual faced with a sudden emergency is that of a reasonable man faced with the same circumstances. *See Petefish v. Dawe*, 137 Ariz. 570, 575, 672 P.2d 914, 919 (1983); *see also* Prosser, *Handbook of the Law of Torts*, § 33, at 169 (4th ed. 1971) ("conduct required is still that of a reasonable man under the circumstances, as they would appear to one who was using proper care ...." (footnotes omitted)). Whether an individual's conduct conforms to the standard is to be viewed objectively. *Id.*

In *Petefish, supra*, at 573, 672 P.2d at 917 we said the rationale for the sudden emergency instruction is

> "that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has

had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. His choice 'may be mistaken and yet prudent.' "

(Quoting Prosser, *supra*, at 169 (footnotes omitted)).

■ When a jury instruction is challenged, we must view the evidence in a light most favorable to the party who requested the instruction. *See Tansy v. Morgan*, 124 Ariz. 362, 604 P.2d 626 (1979). In this case Munn requested the instruction. (We note that the party who requests the sudden emergency instruction need not be the actor who experienced the event, as the party to the lawsuit may be a representative of the actor, who is either deceased or otherwise unable to testify. *See infra* discussion at 370–371.)

■ In Arizona, a party is entitled to have the sudden emergency instruction given if she produces sufficient evidence to show the actor was suddenly confronted with imminent peril, *Tansy, supra*, at 364, 604 P.2d at 628, or the actor reasonably believed she was suddenly confronted with imminent peril, *Petefish, supra*, 137 Ariz. at 574, 672 P.2d at 918 (1983), provided the actor did not cause the sudden emergency through her own negligence, *Tansy, supra*, 124 Ariz. at 364, 604 P.2d at 628, and the actor "reacted to the emergency, even though that reactive conduct might be quite impulsive ...." *Petefish, supra*, 137 Ariz. at 573, 672 P.2d at 917.

Jones argues, and the court of appeals ruled, that Munn did not show she was aware of the peril. Jones concludes that Munn did not satisfy the third requirement set forth above and the sudden emergency instruction was therefore unwarranted. Munn argues that although she testified she did not see Jones' automobile in her lane of traffic, the testimony of the experts establishes that she was aware of and reacted to the peril. Munn concludes the instruction was warranted by the evidence.

The question presented in this case is: can the sudden emergency instruction be given when there is evidence to support a finding that the actor was aware of the peril but the actor denies she was aware of the peril. Before we answer this question, we must first state that we agree with the statement in *Woods v. Harker*, 22 Ariz. App. 83, 85, 523 P.2d 1320, 1322 (1974), that the actor must be aware of the sudden peril or the rationale underlying the rule is not served. The instant case calls into question the assertion in *Woods, supra,* that "[i]f the actor denies that he perceived any danger, then his actions cannot be the product of the emergency situation, and hence an instruction on sudden peril is not warranted." *Id.*

■ In *Fulton, supra,* the party who sought the instruction was the surviving widow of Arnold Johannsen, who lost his life in the accident out of which the lawsuit arose. The court of appeals said that "there could be no evidence as to the state of mind of the deceased," *id.* 3 Ariz.App. at 565, 416 P.2d at 986, but in upholding the award in favor of the surviving spouse the court implicitly recognized that an actor's testimony concerning his awareness of the peril was not the only method by which the actor's awareness of the peril could be proved. In *City of Tucson v. Wondergem,* 105 Ariz. 429, 431, 466 P.2d 383, 385 (1970) (the sudden peril caused decedent's death and the instruction was sought by decedent's surviving spouse) we implicitly recognized that evidence other than the actor's testimony could support a finding that the instruction was warranted. Thus, in Arizona, when the actor who experienced the sudden peril is no longer able to testify, other evidence may be introduced to prove the actor was aware of the peril. *See id.; Fulton, supra.*

But the precise issue we must resolve is not covered by the above cases. Munn is able to testify and she denies seeing Jones' automobile in her lane. This case would seem to be controlled by *Woods, supra;* however, in *Woods* the actor testified that she was unaware of the sudden peril and there was no other evidence on the issue. Thus, there was no evidence she was aware of the peril and the result in *Woods* is correct. However, we think the language in *Woods* indicating that the sudden emergency instruction may not be given whenever the actor denies awareness of the peril is legally incorrect. Simply because the actor denies seeing the peril does not mean that she was not aware of it.

The trial court found *Woods, supra,* "doesn't fit the situation I have here. While there was a denial by Mrs. Munn of the peril there is testimony that she did react and that she did react at a point where there was available to her several choices." We think the trial court properly distinguished *Woods.*

■ We hold that a party may have a sudden emergency instruction given even though the actor denies she was aware of the peril, if there is other sufficient evidence to show the actor was aware of the peril. Awareness of the peril need not be an act of cognition; all that is required is that the actor perceived the peril. In this case, the evidence dealing with awareness of the peril is inconsistent, but there is sufficient evidence from which the jury could infer that Munn was aware of the peril and her otherwise imprudent conduct was a response to the peril. Thus, applying the instruction in this case is consistent with the rationale for the rule.

We are aware of the rule of law which holds that a party is bound by her own testimony. This is true as to testimony regarding matters where the party has full knowledge and access to the facts. Basically Munn's testimony is that she never saw the Jones vehicle in her lane. In the context of a sudden emergency and the fact that sight is only one of the human senses, we find no contradiction with the rule just discussed and the holding of this case.

## COMMENT ON THE EVIDENCE

Jones argues that the trial court improperly commented on the evidence. The court of appeals concluded that Jones' ar-

gument was correct, but it did not fashion a remedy for this error as the court of appeals reversed the case on other grounds.

During cross-examination of Munn's expert witness Mr. Hicks, Jones' attorney asked questions that Munn's attorney believed improperly injected into the case the fact that Munn had insurance.[1] Munn moved for a mistrial; Jones claimed a cautionary instruction would be sufficient. From the record it appears none of the participants was aware, at that time, of 17A A.R.S. Arizona Rules of Evidence, rule 411 (evidence of insurance is admissible "as proof of ... bias or prejudice of a witness."). The trial court then gave a cautionary instruction.[2] Both parties objected. Munn claimed a mistrial was required; Jones claimed, citing no Arizona authority, that the questions were proper to show bias.

 No cautionary instruction should have been given. First, the questions con-

ately done on behalf of the defendants, Mrs. Munn and Mr. Munn, by Mr. Hicks, or no lawyers have an absolute legal right to go out on the scene of an accident and try to get evidence, take statements and pictures and do whatever they felt was appropriate to preserve the evidence at the scene or whatever else was done.

"This is an absolute legal right that they have and their exercise of it was well within their right to do so. For that reason you're specifically instructed to disregard any portion of the testimony involving Mr. Hicks's cross-examination which might in any way lead you to conclude or come to an inference that Mr. Hicks's actions six days after the accident investigation in taking pictures and other things might have been inappropriate or under conditions which at that time indicated something wrong on behalf of Mr. and Mrs. Munn."

The trial court explained its actions in this way:

"THE COURT: There is one other thing I ought to mention in fairness, because maybe we are going to take this up, and maybe that whole issue should be resolved, the Court is aware that, and has given some consideration to the fact that the coverage in this case, as far as Mr. and Mrs. Munn is concerned, is $25,000.00. Which in this particular type of case, in view of the seriousness of the injuries, would appear to be substantially low as compared to the seriousness of the injuries. For that reason the Court had perhaps an extra concern that an inference could be drawn, not only of insurance, but of perhaps a substantial amount for more than the minimum coverage which would not be an appropriate inference with regard to the facts. So it was for those reasons that the Court felt that we have a serious situation here. And Mr. Julian had a basis to make his motion and the Court has stiven [sic] mightily to provide a cautionary instruction to preserve the case without highlighting the problem itself.

"However, the lack of words relating to insurance raised in the court some question as to whether or not the jury being laymen would read the terminology in the same way that we did, and for all of those reasons I did what I did and we'll go on from there. We have at least a clear record of what I did and why I did it."

1. "Q. Okay. I have just a few more things that have nothing to do with accident reconstruction at all, but I want to cover these with you. This accident happened March 1, 1975, correct?
"A. Yes, sir.
"Q. And you were hired by a representative of the Munn's to investigate this accident on what date?
"A. March the 6th, 1975.
"Q. That representative of the Munn's that contacted you was one who customarily works with Mr. Julian, correct?
"A. Yes. Did at the time.
"Q. Okay. And the type of cases that the custom—that the representative of the defendant who contacted you and Mr. Julian customarily work together on are cases where they are defending a person who has been sued, correct?
"A. Well, eventually many of them are. Many of them are—many of the accidents that—representative calls me never sees litigation. I am—
"Q. Yeah. But those that do Mr. Julian is defending usually, correct?
"A. That is true.
"Q. All right. After being contacted by this representative five days after the accident, the first thing you did was to go to the scene, I believe?
"A. Yes.
"Q. And when did you do that?
"A. I believe it was on the 7th.
"Q. And was that when you took the photographs that are in evidence?
"A. Yes, sir."

2. "Before we get to another aspect of the trial, there's something I have to discuss with you [the jury] with regard to the testimony.
"Over the lunch hour I concluded after an objection was raised to me appropriately about some testimony which came in just before lunchtime, that there's something I have to talk to you about before we recess today.
"During Mr. Hofmann's cross-examination of Mr. Hicks there was a potential for an inference being considered that because Mr. Hicks began his investigation of this accident some six days after it occurred that perhaps this indicated something wrong, or something was inappropri-

cerning Munn's "representative" did not, we find, inject into the case the fact that Munn had insurance. We do not think a juror ·would leap to the conclusion that Munn was insured simply by hearing that Hicks was hired by Munn's "representative." Second, assuming *arguendo* that the use of the word "representative" did inject into the case the fact that Munn was insured, Jones properly could have shown Hicks' potential bias as a result of being hired by Munn's insurer. *See* rule 411, *supra.* Jones now claims that the trial court committed reversible error in giving this instruction as the jury was improperly told to disregard Hicks' potential bias because the jury was told to disregard any implication of insurance. We do not agree. The trial court thought evidence of insurance was inadmissible and gave the instruction to counteract the supposed improper injection of insurance into the case; however, the instruction given does not address the presumed harm. From this instruction we find it improbable that the jury would believe they were to disregard Hicks' potential bias as a result of being hired by Munn's insurer. If the challenged questions impeached Hicks' testimony, in the minds of the jurors, as being biased because he was hired by Munn's insurer, this instruction could not have altered that result. Thus, as to insurance and Hicks' resulting potential bias, there was no comment on the evidence and hence no reversible error.

■■■ Jones next claims that the instruction was an improper comment on the evidence because the instruction informed "the jury that it could draw no inference from the rapidity of Hicks' employment and investigation after the accident." (Hicks was hired and commenced his investigation within a few days after the accident.) In Arizona, the judge may not comment on the evidence. Ariz. Const. art. 6, § 27. To constitute a comment on the evidence, the court must express an opinion as to what the evidence shows or what it does not show. *See State v. Barnes,* 124 Ariz. 586, 590, 606 P.2d 802, 806 (1980). Inferences to be derived from the evidence are within the sole province of the jury. *Gibbs v. State,* 48 Ariz. 25, 29, 58 P.2d 1037, 1039 (1936). However, a case will not be reversed unless the comment prejudiced the party who opposed it, *see State v. Diaz,* 110 Ariz. 32, 35–36, 514 P.2d 1028, 1031–32 (1973), and the test for determining prejudice is whether there is a reasonable probability a different verdict might have been reached if the error had not occurred, *id.* at 36, 514 P.2d at 1032.

■■ We find that the instruction or admonishment to the jury was a prohibited comment on the evidence, but we do not think it constitutes reversible error. Jones alleges that the trial court's statement is error, but Jones does not allege it is prejudicial error (aside from her claim concerning insurance which we held to be not well-founded). Also, at trial, Jones' attorney "indicated very strongly an objection to the Court's phraseology in the cautionary instruction," but twice indicated he did not want the court to grant a mistrial. The trial court asked if Jones wanted to move for a mistrial to which Jones' attorney replied: "No, I don't. No indeed. I'm not that incompetent." Apparently Jones did not like the wording of the instruction, but she was confident her case was well-presented and wanted the case to go to the jury.

Jones has neither claimed nor shown that this statement, as it relates to the hiring of Hicks and his investigation, was prejudicial. *See State v. Ferrari,* 112 Ariz. 324, 329, 541 P.2d 921, 926 (1975). We do not find the statement prejudicial and hence it does not constitute reversible error.

The opinion of the court of appeals is vacated. Judgment affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.