751 P.2d 964

James **BARSEMA** and Debra Barsema, Plaintiffs/Appellants,

v.

William A. **SUSONG** and Jane Doe Susong, husband and wife; Phoenix Gynecologists, Ltd., a corporation; Richard A. Thompson and Jane Doe Thompson, husband and wife; St. Joseph's Hospital and Medical Center, a corporation; Black Corporation 1 through 10, and John Doe and Jane Doe, husband and wife 1 through 10, Defendants/Appellees.

No. 2 CA–CV 5794.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 9, 1986.

Treon, Warnicke & Roush, P.A. by Monte M. Simpson and JoJene E. Mills, Phoenix, and Thompson, Dalton & DeRose by Jerry DeRose, Globe, for plaintiffs/appellants.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks and James W. Kaucher, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from a jury verdict in favor of defendants and from a denial of plaintiffs' motion for new trial by the superior court. On October 1, 1982, Debra Barsema, age 29, underwent a vaginal hysterectomy at St. Joseph's Hospital in Phoenix, which was performed by Dr. William Susong. She was discharged to her home in Globe, on October 5, 1982.

Sometime during the night and morning of October 7–8, Debra Barsema had a pulmonary embolism. She exhibited symptoms of severe chest pain, shortness of breath and tachycardia which lasted for a couple of hours. She continued to have shortness of breath and chest discomfort throughout October 8 and she was pale and weak.

Jim Barsema talked to Dr. Susong on October 8 about his wife's problems the night before. Dr. Susong summarized his conversation with Barsema on October 8 in his office notes, recording that Debra had "tightness in chest" the night before that lasted a couple of hours and that she was very weak if she tried to walk. He noted that no fever and no bleeding were reported that morning and requested Jim Barsema to obtain a complete blood count at a local medical facility. Dr. Susong testified that as a result of his conversation with Jim Barsema, one of the possibilities he considered was a pulmonary embolism.

On Sunday, October 10, while rehospitalized, Debra suffered a cardiac arrest as a result of a massive pulmonary embolism.

CPR was performed in excess of two hours. The pulmonary embolism was removed by surgery that evening. Debra suffered brain damage.

Two issues are raised on appeal: (1) the trial court erred in not allowing plaintiffs to demonstrate Dr. Crisp's agency, bias and prejudice by cross-examining him about his employment relationship with Mutual Insurance Company of America (MICA), defendants' insurer, pursuant to A.R.S. § 12–569; (2) the trial court erred in precluding plaintiffs from calling Dr. Ivey as an expert witness.

### A.R.S. § 12–569

MICA is the insurance carrier for most doctors in Arizona, including defendants Susong and Thompson. Dr. Crisp is MICA's vice president and a member of MICA's board of directors. He is compensated for the duties he performs for MICA.

Dr. Crisp was presented to the jury as an independent, impartial expert, who testified that defendants did not fall below the standard of care in treating Debra Barsema. Plaintiffs wished to question him about his duties, compensation and overall employment with MICA. The trial court precluded this line of cross-examination, stating that A.R.S. § 12–569 precluded its introduction. The statute provides:

> "During the trial of a medical malpractice action against a licensed health care provider ... evidence that any party or that any witness testifying in such trial, hearing, or review proceeding has been or is covered by a professional liability insurance policy issued by a health care insurer established pursuant to title 20, chapter 7, article 2 [A.R.S. §§ 20–1721 to 20–1724] or that such party or witness has a financial interest in the operation of such a health care insurer arising as a result of the ownership of stock, a policy or policies of insurance, notes, including contributed surplus notes, any other evidence of indebtedness, or otherwise, shall not be received in evidence for any purpose."

As promulgated by the Arizona Supreme Court, however, Rule 411, Rules of Evidence, 17A A.R.S. provides:

> "This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

A.R.S. § 12–569 became effective on February 27, 1976, and the supreme court adopted Rule 411 on June 1, 1977. Defendants argue that for this reason, the statute takes precedence over the rule. We disagree. Pursuant to Article 6, § 5(5), the Arizona Constitution gives the supreme court the power to make rules relative to all procedural matters in any court. "Rules of evidence have generally been regarded as procedural in nature." *State ex rel. Collins v. Seidel,* 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984); see also I Wigmore on Evidence § 7, at 462–63 n. 1 (Tillers rev. 1983). When the court adopted Rule 411, it effectively eliminated that part of A.R.S. § 12–569 which precludes the introduction of evidence indicating that a party or witness has a financial interest in the operation of a health care insurer, and it became void. As our supreme court has noted: "[S]tatutory rules shall remain in effect until modified or suspended by the rules promulgated by the supreme court." *State v. Blazak,* 105 Ariz. 216, 217, 462 P.2d 84, 85 (1969), quoting *Arizona Podiatry Assoc. v. Director of Insurance,* 101 Ariz. 544, 546, 422 P.2d 108, 110 (1966). See also A.R.S. § 12–111.

Plaintiffs also contend that A.R.S. § 12–569 is unconstitutional. This issue was not presented to the trial court and, although the general rule is that a constitutional question cannot be raised for the first time on appeal, an exception exists when the issue is one of public policy or statewide concern. *Porter v. Eyer,* 80 Ariz. 169, 294 P.2d 661 (1956); *Arnold v. Knettle,* 10 Ariz.App. 509, 460 P.2d 45 (1969). We are confronted here with the doctrine of separation of powers. We consider the constitutionality of the statute to be of statewide interest and agree that it is unconstitutional on two grounds.

As just noted, Article 6, § 5(5) grants the supreme court the power to make rules "relative to all procedural matters in any court." Accordingly, the supreme court promulgated the rules of evidence. In *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984), the supreme court discussed what should be done if a statute and a rule of the supreme court are in conflict:

"That we possess the rule-making power does not imply that we will never recognize a statutory rule. We will recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated. *Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). However, when a conflict arises, or a statutory rule tends to engulf a general rule of admissiblity, we must draw the line. The legislature cannot repeal the Rules of Evidence or the Rules of Civil Procedure made pursuant to the power provided us in article 6, § 5."

In this case, Rule 411 and A.R.S. § 12–569 are clearly in conflict. Evidence of Dr. Crisp's bias, interest, and agency would clearly have been admissible under Rule 411, whereas this evidence is clearly inadmissible under the statute. The clear import of § 12–569 cannot be ignored—evidence of a financial interest in the operation of a health care insurer may not be received in evidence for *any* purpose no matter what type of financial interest the witness possesses in the company. Because we find that A.R.S. § 12–569 cannot be reconciled with the supreme court's evidentiary rule 411, the statute is unconstitutional.

█ Plaintiffs also claim that A.R.S. § 12–569 is unconstitutional as a special law prohibited by the Arizona Constitution, Art. 4, pt. 2, § 19, which provides: "No local or special laws shall be enacted in any of the following cases, that is to say ... 3) Changing rules of evidence ... 13) Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises." A special law applies only to certain members of a class

or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose. *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 637 P.2d 1053 (1981); *State v. Loughran*, 143 Ariz. 345, 693 P.2d 1000 (App.1985). In contrast, a general law is one "that confers rights and privileges or imposes restrictions on all persons of a given class where the classification has a basis in reason." *State v. Loughran*, supra, at 347, 693 P.2d at 1002; see also *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977). To decide whether A.R.S. § 12–569 is a special law, we must determine whether the classifications used by the legislature have a rational basis.

The purpose of the Arizona Medical Malpractice Act, A.R.S. §§ 12–561 to 12–569, has been well documented. "The Act was a legislative response to the difficulties faced by doctors and hospitals in obtaining insurance coverage at reasonable rates." *Eastin v. Broomfield*, 116 Ariz. at 584, 570 P.2d at 752. However, since *Eastin*, the Arizona Supreme Court has cast doubt on the efficacy of the Act. In *Kenyon v. Hammer*, 142 Ariz. 69, 84–85, 688 P.2d 961, 976–77 (1984), the court stated:

"The statute has been in effect nine years. So far as the record shows, malpractice premiums have not declined and health care costs have increased to the crisis point."

It appears that the Medical Malpractice Act has not had its .intended effect in lowering malpractice premiums.

In any event, this goal cannot be accomplished at the expense of giving the plaintiffs in this malpractice action less than a fair trial. In *Jones v. Munn*, 140 Ariz. 216, 681 P.2d 368 (1984), the supreme court held that the potential bias of a witness, as a result of being employed by an insurance company, should be brought to the jury's attention. In *Jones*, the plaintiff's attorney cross-examined the defendant's expert witness and asked if he was employed by a representative of the Munns. Defendant argued that the questions improperly injected the fact that the defendant had insurance into the case. Defendant asked

for a mistrial while plaintiff claimed a cautionary instruction would suffice. The court noted that no cautionary instruction should have been given and commented: "From the record, it appears none of the participants was aware, at that time, of 17A A.R.S. Arizona Rules of Evidence rule 411." 140 Ariz. at 220, 681 P.2d at 372.

The relationship between A.R.S. § 12–569 and the goals of the Act is further attenuated by the fact that this evidence will be excluded only against a small group of witnesses and parties. The statute protects only those doctors covered by a professional liability insurance policy issued by a health care insurer established pursuant to A.R.S. §§ 20–1721 to 20–1724. There is no requirement or provision for all health care insurers in this state to be established under these statutes. Therefore, the privilege is not conferred upon all defendant physicians or all physician witnesses, but only those insured by companies such as MICA.

We find that A.R.S. § 12–569 is a special law which grants to certain health care insurers an immunity from Rule 411 and which is not rationally related to a legitimate governmental purpose. The statute has little relevance to promoting meritorious claims and discouraging frivolous ones, nor in promoting settlement or decreasing the cost of litigation. As the supreme court stated in *Kenyon v. Hammer*, supra, "special privileges and immunities are not favored by Arizona law." 142 Ariz. at 84, 688 P.2d at 976.

■ Defendants argue that even if evidence of Dr. Crisp's employment was admissible under Rule 411, the prejudice resulting from revealing that Dr. Susong had insurance would substantially outweigh any probative value of impeaching Dr. Crisp's testimony. We disagree.

This exact argument was considered by the Eighth Circuit Court of Appeals interpreting federal Rule 411 in *Charter v. Chleborad*, 551 F.2d 246, cert. denied, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977). In that case, a plaintiff in a medical malpractice action offered testimony through a Dr. Lichtor that the standard of care had been breached by the defendant. In rebuttal, defendant introduced testimony of John J. Alder, an attorney who testified that Dr. Lichtor's reputation for truth and varacity in the Kansas City area was bad. The plaintiff was prevented from showing on cross-examination that Alder was employed by the same liability carrier who represented the defendant, Dr. Chleborad. The court of appeals reversed the trial court and ordered a new trial for the plaintiff. The defendant doctor had argued that Rule 403 was justification for excluding evidence of his insurance and the witness' employment. In rejecting defendant's argument, the court stated:

"This argument is without merit. In our opinion the probative value of the evidence far outweighs any danger of unfair prejudice. Also, there is no indication in the record or briefs of the parties that any particular prejudice was threatened in this case. Rule 403 was not designed to allow the blanket exclusion of evidence of insurance absent some indicia of prejudice. Such a result would defeat the obvious purpose of Rule 411." 551 F.2d at 249.

■ We find it was error for the court not to allow plaintiffs to cross-examine Dr. Crisp regarding his employment relationship with MICA. However, defendants had several doctors who testified on the issue of negligence on their behalf. To determine whether this error requires reversal, a review of the complete transcript of the doctors' testimony at trial as well as closing arguments would be necessary. Plaintiffs failed to provide us with the complete record on appeal, and since it is plaintiffs' burden as appellants in this case to do so, *Rancho Pescado, Inc. v. Northwestern Mutual Life Insurance Company*, 140 Ariz. 174, 680 P.2d 1235 (App.1984), we must find any error harmless.

## EXPERT WITNESS

■ Plaintiffs also argue that it was error for the court not to permit Dr. Ivey, a general practitioner in Payson, Arizona, to testify on the standard of care applicable to Dr. Susong, a Phoenix physician certified

 

as a specialist in obstetrics and gynecology, and Dr. Thompson, also a Phoenix physician certified as a specialist in neurology. It is not strictly necessary in a medical malpractice action that a witness be of the same specialty as the defendant in order to testify as to the applicable standard of care. *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (App.1978). Competency of an expert is for the sound discretion of the trial judge. *Harris v. Campbell*, 2 Ariz. App. 351, 409 P.2d 67 (1966). We have searched the record and are unable, without evidence of the foundation presented to the trial court supporting the admission of Dr. Ivey's testimony, to find that the trial court abused its discretion. In the absence of such evidence, we must assume that it supported the trial court's decision to preclude Dr. Ivey's testimony.

Furthermore, plaintiffs do not dispute that they never listed Dr. Ivey as a witness pursuant to Rule V, Uniform Rules of Practice, 17A A.R.S. Similarly, they do not dispute that they never identified Dr. Ivey as an expert witness on the standard of care in their supplemental answers to defendants' interrogatories. Thus, when defendants withdrew Dr. Ivey from their list of witnesses and exhibits, he was no longer listed by anyone.

Uniform Rule V(a) provides in pertinent part:

"No exhibits or witnesses shall be used at trial other than those listed in accordance with this Rule, except for good cause shown or upon written agreement of the parties."

Similarly Rule 26(e), Rules of Civil Procedure, 16 A.R.S. provides in part:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial ... and the substance of his testimony.... A party shall supplement his responses ... at the time of filing their lists of witnesses and exhibits required by Rule V(a), Uniform Rules of Practice. Any witness not identified in accordance with this Rule shall not be permitted to testify except for good cause shown or upon written agreement of the parties."

The trial court is afforded great discretion to decide whether plaintiffs had shown good cause to allow such testimony. See *Walker v. Kendig*, 107 Ariz. 510, 489 P.2d 849 (1971). Since we find that plaintiffs failed to comply with both Uniform Rule V(a) and Rule 26(e), we find no abuse of discretion.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.