751 P.2d 969

James **BARSEMA** and Debra Barsema, Plaintiffs/Appellants,

v.

William A. **SUSONG** and Jane Doe Susong, husband and wife; Phoenix Gynecologists, Ltd., a corporation; Richard A. Thompson and Jane Doe Thompson, husband and wife; St. Joseph's Hospital and Medical Center, a corporation; Black Corporation 1 through 10, and John Doe and Jane Doe, husband and wife 1 through 10, Defendants/Appellees.

No. CV-87-0031-PR.

Supreme Court of Arizona, En Banc.

March 10, 1988.

Treon & Warnicke, P.A. by Monte M. Simpson, JoJene E. Mills, Mark T. Palin, Phoenix, and Thompson, Dalton & DeRose by Jerry B. DeRose, Globe, for plaintiffs/appellants.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks, James W. Kaucher, Scott

H. Houston, Phoenix, for defendants/appellees.

Langerman, Begam, Lewis and Marks by Amy G. Langerman, and Leslie E. O'Hara, Phoenix, for amicus curiae Arizona Trial Lawyers Ass'n.

FELDMAN, Vice Chief Justice.

James and Debra Barsema (plaintiffs) petition us to review a decision of the court of appeals. We granted review to determine whether A.R.S. § 12–569 can be constitutionally applied to limit the cross-examination of an expert witness on issues pertaining to possible bias and prejudice. *See* Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS

Plaintiffs brought a malpractice action against William Susong, M.D. (defendant). Mutual Insurance Company of Arizona (MICA) provided malpractice coverage for the claim. One of defendant's expert witnesses was William Crisp, M.D., allegedly a MICA shareholder and insured. Dr. Crisp was a vice president and member of MICA's board of directors. Although he was not salaried, Dr. Crisp was compensated for the duties he performed for MICA. According to Dr. Crisp, his duties as a board member included trying to keep premiums low. Basing his ruling on A.R.S. § 12–569, the trial judge granted defendant's motion in limine to preclude plaintiffs from mentioning MICA or the fact that Dr.

Crisp was involved with MICA and/or any of its committees. So far as the jury knew, Dr. Crisp was an impartial, independent expert testifying that defendant had not fallen below the applicable standard of care in treating plaintiff Debra Barsema.

■ The trial judge entered judgment on a verdict for defendant and plaintiffs appealed. The court of appeals held A.R.S. § 12–569 unconstitutional[1] and found the trial judge erred in prohibiting plaintiffs from cross-examining Dr. Crisp regarding his employment relationship with MICA. *Barsema v. Susong*, 156 Ariz. 304, 307, 308, 751 P.2d 964, 967, 968 (Ct.App.1986). Nevertheless, the court affirmed the judgment for defendant, holding that plaintiffs had failed to demonstrate that the error was prejudicial. *Id.* at 308, 751 P.2d at 968.

### THE STATUTE

1. Scope

The relevant portions of § 12–569 provide:

> During the trial of a medical malpractice action ... evidence that ... any witness ... has been or is covered by a professional liability insurance policy issued by a health care insurer established pursuant to [A.R.S. §§ 20–1721 to –1724] or that such ... witness has a financial interest in the operation of such a health care insurer arising as a result of the ownership of stock, a policy or policies of insurance, notes, including contributed surplus notes, any other evidence of in-

---

1. In his motion in limine, defendant moved to exclude evidence that Dr. Crisp was either insured by or had an employment relationship with MICA, claiming the statute prohibited examination "for any purpose." Presumably, the trial judge granted the motion on those grounds, no others having been raised to him or mentioned by him. Plaintiffs did not object to the exclusion on constitutional grounds; however, they did raise the issue in their motion for new trial. Ordinarily, an appellate court will not consider an issue first raised on appeal. *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986). While an appellate court has jurisdiction to consider such an issue, it ordinarily will not exercise such jurisdiction unless the issue presents an important matter of public policy or statewide concern.

*Hawkins v. Allstate Insurance Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987). Where the issue is one of constitutional dimensions, discretion to exercise such jurisdiction should be even more sparingly invoked, since the general rule is that constitutional issues should not be reached or decided unless necessary to a determination of the merits of a case. *School District No. 26 v. Strohm*, 106 Ariz. 7, 9, 469 P.2d 826, 828 (1970). The court of appeals noted that defendant did not object to the court of appeals' considering the constitutional issue although it was not timely raised in the trial court. Because the court of appeals elected to deal with the issue in a published opinion, we have, under the unusual circumstances of this case, also elected to deal with it although not required to do so.

debtedness, or *otherwise*, shall not be received in evidence for any purpose.

(Emphasis added.)

In holding that the trial court erred, the court of appeals found "[e]vidence of Dr. Crisp's bias, interest, and agency would clearly have been admissible under Rule 411," Ariz.R.Evid., 17A A.R.S.[2] Op. at 307, 751 P.2d at 967.[3] Because the court determined the evidence was "clearly inadmissible under [A.R.S. § 12–569]," it found, *inter alia*, that the statute could not be reconciled with Rule 411 and therefore was unconstitutional. Op. at 307, 751 P.2d at 967.

■ In oral argument before this court, defendant all but conceded that the statute would be unconstitutional if interpreted to forbid the admission of Dr. Crisp's employment relationship with MICA. Were such a prohibition explicit in the statute, we would not hesitate to agree with the court of appeals that it was facially invalid for the reasons set forth in that court's opinion. Defendant now argues that it is not necessary to interpret § 12–569 so broadly. The statute does not by its terms forbid cross-examination of a defense expert in order to establish that he is an officer, director or employee of the insurance carrier that indemnifies the defendant for the loss arising from the subject of the litigation. Defendant's concern, instead, turns to the admissibility of evidence that the witness and the party share a common insurer.

### 2. Correlation of A.R.S. § 12–569 and Rule 411

The court of appeals did not consider the statute's constitutionality if given a limited construction, as defendant now urges it should be, so that it forbids only an attempt by plaintiffs to establish that Dr. Crisp was covered by the same insurance carrier as defendant. Defendant contends that the statute may be upheld insofar as it forbids evidence that a defense expert might be biased simply because he or she was insured by the same company as defendant. Because MICA was organized in response to the alleged malpractice crisis in 1974–75[4] many Arizona doctors are insured by it. Defendant fears, therefore, that absent A.R.S. § 12–569,[5] plaintiffs' counsel could often interject the issue of insurance when cross-examining defense experts who had the same insurance carrier as defendant. This could be done on the theory that the expert was biased because any verdict against defendant might affect insurance premiums charged Arizona doctors, including the particular witness. We do not believe defendant's fears are well founded.

The interjection of insurance is prejudicial in negligence cases primarily because it may affect the findings of some jurors on the questions of liability and damages, when it is not relevant to either. *Muehlebach v. Mercer Mortuary & Chapel*, 93 Ariz. 60, 62, 378 P.2d 741, 743 (1963). For this reason, it was our general rule for many years that any mention that defendant had liability insurance mandated either a mistrial or a new trial. *Michael v. Cole*, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979) (citing *Blue Bar Taxicab & Transfer Co. v. Hudspeth*, 25 Ariz. 287, 216 P. 246 (1923)). This court has also recognized, however, that the existence of liability insurance should be admitted when relevant to prove a disputed fact. *See, e.g., Arizona Cotton Oil Co. v. Thompson*, 30 Ariz. 204, 211, 245 P. 673, 675–76 (1926); *Arizona–Hercules Copper Co. v. Crenshaw*, 21 Ariz. 15, 27, 184 P. 996, 1000–01 (1919). Even in *Hudspeth*, the case that announced Arizona's nondisclosure rule, the court qualified its

---

**2.** Arizona Rules of Evidence will hereafter be referred to as Rule ——.

**3.** The court also relied on our holding in *Jones v. Munn*, 140 Ariz. 216, 681 P.2d 368 (1984), where, citing Rule 411, we held evidence of an expert witness's employment status with defendant's insurer was admissible to show potential bias. 156 Ariz. at 307, 751 P.2d at 967.

**4.** Medical Malpractice Act of 1976, ch. 1 (1st Spec.Sess.), 1976 Ariz.Laws 989; *see also Eastin v. Broomfield*, 116 Ariz. 576, 584, 570 P.2d 744, 750 (1977).

**5.** A.R.S. § 12–569 was part of the Medical Malpractice Act of 1976.

grant of a new trial by stating that the information about insurance was not relevant to "any legitimate" issue. 25 Ariz. at 296, 216 P. at 249. Furthermore, in *Muehlebach* this court narrowed the *Hudspeth* rule by finding that a trial judge should not grant a new trial or mistrial upon the mere mention of insurance unless defendant could demonstrate prejudice. 93 Ariz. at 65, 378 P.2d at 744.

These common law principles have been codified in Rule 411:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, *or bias or prejudice of a witness.*

(Emphasis added.) Rule 411 appears in that section of the rules dealing with evidence that shares the common attribute of ordinarily having little or no relevancy but substantial capacity for creating prejudice. This section includes subsequent remedial measures, offers of compromise, defendant's offers to pay expenses caused by his conduct, and offers to plead guilty. *See* Rules 407 through 410. However, these rules all share the common exception that allows admission of such "dangerous" evidence when offered for a purpose other than the least relevant and most prejudicial purpose: that of affecting the jury's findings on liability and damages. *See, e.g., Readenour v. Marion Power Shovel,* 149 Ariz. 442, 447–48, 719 P.2d 1058, 1063–64 (1986) (Rule 407 does not require the exclusion of evidence of remedial measures when offered for another purpose).

Even when the evidence has a relevant purpose, the rules provide further protection from prejudice. Evidence relevant to one issue, such as bias, but prejudicial to another, may be admitted only if it passes the "threshold of Rule 403, which permits the *trial judge* to exclude relevant evidence where the probative value is 'substantially outweighed' by any of a variety of factors, including 'danger of unfair prejudice.' " *Id.* at 449, 719 P.2d at 1065.

### 3. Application to Cases Where Defendant and Witness Have a Common Insurer

■ Given the currently raging debate over the relationship between malpractice cases and malpractice insurance, we think it certain that in every jury there will be at least one member who has heard of malpractice insurance. *See* M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: LAW OF EVIDENCE § 91 (2d ed. 1982). But even acknowledging that most jurors may surmise that defendant is insured, the introduction of evidence on the subject tends to emphasize something that is usually irrelevant and that may have an adverse effect on the quality of the jury's deliberations and conclusions. As noted in the previous section, the Rules of Evidence are adequate in addressing this problem. Therefore, we do not accept defendant's implicit hypothesis that absent A.R.S. § 12–569 plaintiffs would always be free to show bias by cross-examining a defense expert to prove that he and defendant had the same insurer. In most cases, the conclusion that a witness would be biased because he or she and a party had the same insurer is so attenuated that the predicate evidence—proof of insurance—is of questionable relevancy, even if it could be established as a fact. *See* Rule 401.

Of course, we acknowledge that in dealing with a captive insurer such as MICA, with a comparatively small premium pool, evidence of a common insurer between the witness and the defendant might be more relevant than in ordinary cases. Nonetheless, we believe defendant's apprehensions are unsupported. In all but the exceptional case, a trial judge applying Rule 403 should hold that the danger of prejudice resulting from the interjection of insurance evidence substantially outweighs the probative value of evidence that the witness and a party have a common insurer. In all but exceptional cases, therefore, the type of evidence that concerns defendant would not be admitted if the trial court follows the process contemplated when Rules 411, 401 and 403 are invoked.

■ This brings us to the portion of the statute prohibiting proof that "any witness ... has been or is covered by a professional liability insurance policy" issued by MICA. As we indicated in *Readenour*, our constitutional rulemaking power is based upon art. 6, § 5 of the Arizona Constitution and the separation of powers doctrine contained in art. 3. 149 Ariz. at 444, 719 P.2d at 1060. These doctrines prohibit us from allowing the legislature to "define what is relevant." *Id.* at 446, 719 P.2d at 1062. However, we are free to "recognize statutory evidentiary rules when they are 'reasonable and workable', supplementing rather than contradicting the rules which the court has promulgated." *Id.* at 445, 719 P.2d at 1061 (quoting *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984)).

We do not believe A.R.S. § 12–569 merely supplements the rules so that we could defer to the legislature to promote a substantive goal of public policy. *Cf. Readenour*, 149 Ariz. at 446, 719 P.2d at 1062. Our evidentiary rules cannot be modified to accord special treatment to medical malpractice defendants insured by MICA as opposed to tort and medical malpractice defendants generally. *See* Ariz. Const. art. 2, § 13; art. 4, pt. 2, § 19(13). Further, the flexibility of the rules makes such special privileges unnecessary. Rule 411 absolutely forbids evidence of insurance except where it is not offered on the issue of liability or damages. In other cases, the rules require the trial judge to determine relevancy and then to weigh probative value against danger of prejudice before admission. Rules 401 and 403; *Readenour*, 149 Ariz. at 449, 719 P.2d at 1065. Even when the evidence is admitted, of course, the rules entitle the opponent to a cautionary instruction if he so requests. Rule 105; *Readenour*, 149 Ariz. at 450, 719 P.2d at 1066. The statute, on the other hand, forbids the introduction of the evidence no matter how relevant it might be in an exceptional case, no matter how nonprejudicial it might be, and no matter how carefully the jury might be instructed.

Under the state constitution, we can neither allow the legislature to define what is relevant, *Readenour*, nor allow it to substitute a different analytical framework or make special rules for a particular case, setting aside those evidentiary rules which over the centuries have been found necessary to ensure fair trials. *See State v. Robinson,* 153 Ariz. 191, 198, 735 P.2d 801, 808 (1987). We find that A.R.S. § 12–569 provides an analytical framework contrary to the rules and therefore hold that it is unconstitutional.

■ Thus, we conclude that under the Rules of Evidence the trial judge properly could have excluded evidence that Dr. Crisp was insured by MICA, but erred in precluding the introduction of evidence that Dr. Crisp was MICA's vice president and a member of its board of directors.

## HARMLESS ERROR

■ We turn then to determine whether the error requires reversal. The court of appeals noted that several doctors testified for defendant on the issue of negligence. Without reviewing a transcript, it could not determine whether the improper restriction of Dr. Crisp's cross-examination had prejudiced plaintiffs. Plaintiffs, the appellants in this case, bear the burden of proving that the trial court's decision, even if incorrect, was prejudicial. 156 Ariz. at ——, 751 P.2d at 968 (citing *Rancho Pescado, Inc. v. Northwestern Mutual Life Insurance Co.*, 140 Ariz. 174, 680 P.2d 1235 (App.1984)). No transcript was filed, evidently because, although plaintiffs had ordered daily transcripts, neither they nor the court reporter filed copies of the dailies or of the final transcript with the clerk. *See* C. SMITH, ARIZONA PRACTICE: CIVIL TRIAL PRACTICE § 713 (1986). When plaintiffs moved the court of appeals to allow them to supplement the record by filing a copy of the transcript, they did not explain the previous failure to file, and their motion was denied. Plaintiffs failed to move to supplement in this court until oral argument.

A decision involving the admission or exclusion of evidence, if erroneous, will not warrant reversal unless it affects a substantial right of the parties. *State ex rel.*

*LaSota v. Arizona Licensed Beverage Association,* 128 Ariz. 515, 627 P.2d 666 (1981); Rule 103(a). Given the number of experts who testified for the defense, we must agree with the court of appeals that, without a transcript, plaintiffs have failed to demonstrate that they were prejudiced by the error that limited cross-examination of a single witness.

The opinion of the court of appeals is approved, as supplemented by this opinion. The judgment is affirmed.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.