HAROLD E. WARREN, PLAINTIFF-APPELLANT v. DAVID D. JACKSON, M.D., AND SURRY SURGICAL ASSOCIATES, P.A., DEFENDANT-APPELLEES

No. COA96-289

(Filed 7 January 1997)

**Evidence and Witnesses § 148 (NCI4th)— expert witness— common malpractice insurance carrier—evidence properly excluded**

The trial court did not abuse its discretion by granting defendant doctor's motion *in limine* to suppress evidence that the doctor and two of his expert witnesses shared a common malpractice carrier where plaintiff alleged that he sustained injuries

as a result of the doctor's negligence. Virtually every jurisdiction has concluded that mere policyholder status represents too attenuated a connection with an insurance company for the probative value of such evidence to outweigh the potential prejudice to the jury's deliberations. The connection test adopted in other jurisdictions is consistent with the decision in *State v. Hart*, 239 N.C. 709, 80 S.E.2d 901 (1954) because it safeguards the substantial legal right of a party to cross-examine an opposing witness regarding bias or prejudice, yet also acknowledges the inherent authority, and duty, of a trial court to exclude evidence where the probative value is outweighed by the prejudice such evidence would introduce into the proceedings. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Evidence §§ 483, 488, 495; Witnesses §§ 876, 886.**

Appeal by plaintiff from judgment entered 16 November 1995 and signed 28 November 1995 by Judge Melzer A. Morgan, Jr., in Surry County Superior Court. Heard in the Court of Appeals 20 November 1996.

*John P. Kapp and Martin & Martin, P.A., by J. Matthew Martin and Harry C. Martin, for plaintiff-appellant.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, P.L.L.C., by Stephen W. Coles, for defendant-appellees.*

MARTIN, Mark D., Judge.

Plaintiff Harold Warren (Warren) appeals from jury verdict finding Warren was not injured by the negligence of defendant David Jackson, M.D., (Jackson).

On 21 November 1991 Warren was admitted to Northern Hospital in Mt. Airy, North Carolina. At the time Warren was admitted, it is undisputed he was suffering from severe ischemia of the right great toe and had a history of rest pain in the right foot and right leg. Warren's left leg was non-ischemic. On 25 November 1991 Jackson performed an aorto-biexternal iliac bypass graft. After the 25 November surgery, Warren developed ischemia in the toes of his left foot. On 28 December 1991 Warren's left leg was amputated below the knee.

On 20 August 1993 Warren instituted the present action. On 6 November 1995 Jackson made a motion *in limine* to prohibit ques-

tioning his medical experts concerning the fact Jackson and his medical experts shared a common medical malpractice carrier, Medical Mutual Insurance (Medical Mutual). Although the trial court agreed with Warren that such commonality of insurance may show bias, the trial court, pursuant to N.C.R. Evid. 403, excluded the evidence because "the danger of unfair prejudice and confusion of the issues outweighs its relevancy . . . ." After hearing all the evidence, the jury, on 16 November 1995, found Warren was not injured by the negligence of Jackson.

On appeal Warren, in his sole assignment of error, contends the trial court erred by granting Jackson's motion *in limine*.

Evidence regarding the existence of liability insurance is not *per se* inadmissible when offered for a purpose other than to prove the insured "acted negligently or otherwise wrongfully." N.C. Gen. Stat. § 8C-1, Rule 411 (1992). Put simply, Rule 411 does not operate as an absolute bar to the admission of evidence concerning liability insurance when "offered for [a] purpose, such as proof of agency, ownership, or control, or bias and prejudice of a witness." *Id.* (emphasis added).

In the present case, Warren was prepared to establish, during cross-examination, that two of Jackson's expert witnesses were insured by Medical Mutual—Jackson's malpractice insurance carrier. Warren argues, emphasizing the inherent qualities of mutual insurance companies, that such commonality of insurance tends to prove the expert witnesses were biased because they have a personal financial interest in the outcome of the trial. *See* N.C. Gen. Stat. § 58-8-1, *et seq.* (1994); 3 LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 39:15 (1995) (each member of mutual insurance company is both insured and insurer). Although we acknowledge, as did the trial court, that personal financial interest of a witness falls within the bias exception to Rule 411, *Shields v. Nationwide Mut. Fire Ins. Co.*, 61 N.C. App. 365, 379-380, 301 S.E.2d 439, 448, *disc. review denied*, 308 N.C. 678, 304 S.E.2d 759 (1983), such evidence is subject to the balancing test set forth by N.C.R. Evid. 403.

Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (1992). Application of the Rule 403 balancing test remains entirely within the inherent authority of the trial court. *Carrier v. Starnes*, 120 N.C. App. 513, 519-520, 463

S.E.2d 393, 397 (1995), *disc. review denied*, 342 N.C. 653, 467 S.E.2d 709 (1996). Thus, the balance struck by the trial court will not be disturbed on appeal absent a clear showing the court abused its discretion by admitting, or excluding, the contested evidence. *Id.* A trial court abuses its discretion when its decision "lack[s] any basis in reason." *Judkins v. Judkins*, 113 N.C. App. 734, 740, 441 S.E.2d 139, 142, *disc. review denied*, 336 N.C. 781, 447 S.E.2d 424 (1994).

Warren relies heavily on *Ede v. Atrium South Ob-Gyn, Inc.*, 642 N.E.2d 365 (Ohio 1994), to support his allegation the trial court abused its discretion by prohibiting cross-examination concerning commonality of insurance between Jackson and two of his expert witnesses. In *Ede*, as here, the trial court, pursuant to Rule 403, stated that evidence of a common insurance carrier could not be used to demonstrate bias of an expert witness. *Id.* at 368. The *Ede* Court found such a ruling unreasonable, and thus reversible, for two reasons.

First, the court emphasized "the trial court was not responsive to [plaintiff's] argument that as a fractional part-owner of [the common mutual insurance company], [the defense witness'] own premiums might fluctuate due to the result of the case. Such testimony would have been probative of bias." *Id.* Second, the Ohio Court opined that all too often courts experience a Pavlovian response to evidence of liability insurance—exclusion. *Id.* Such a rote response to insurance evidence is, according to the *Ede* Court, clearly naive in light of the increasing knowledge and sophistication of present-day juries. *Id.* The *Ede* Court thus adopted a *per se* rule "that in a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." *Id.*

The *per se* rule enunciated by the *Ede* Court, however, appears to stand alone among jurisdictions which have considered factually similar issues. *See, e.g.*, *Cerasuoli v. Brevetti*, 560 N.Y.S.2d 468, 469-470 (N.Y. App. Div. 1990); *Strain v. Heinssen*, 434 N.W.2d 640, 642-643 (Iowa 1989); *Barsema v. Susong*, 751 P.2d 969, 973-974 (Ariz. 1988); *Kelley v. Wiggins*, 724 S.W.2d 443, 447 (Ark. 1987); *Otwell v. Bryant*, 497 So.2d 111, 115 (Ala. 1986); *Mendoza v. Varon*, 563 S.W.2d 646, 649 (Tex. Civ. App. 1978). Specifically, the preponderance of jurisdictions have adopted what is best characterized as a "connections test" to determine whether prohibiting a plaintiff from establishing common-

ality of insurance between defendant and his expert witness in an effort to show bias is an abuse of discretion. *Barsema*, 751 P.2d at 973-974, *Otwell*, 497 So.2d at 114-115, *Mendoza*, 563 S.W.2d at 649. *See Strain*, 434 N.W.2d at 642-643 (no abuse of discretion in prohibiting plaintiff from asking experts if services retained by defendant's insurance company because no evidence of an agency or employment relationship between experts and insurance carrier beyond mere payment of fee for testimony). *See also Cerasuoli*, 560 N.Y.S.2d at 469-470 (decided under abuse of discretion standard); *Kelley*, 724 S.W.2d at 447 (same).

In *Barsema*, plaintiff instituted a medical malpractice action against defendant, who was insured by Mutual Insurance Company of Arizona (MICA). *Barsema*, 751 P.2d at 971. One of defendant's expert witnesses, Dr. William Crisp (Dr. Crisp), was also insured by MICA. *Id.* Beyond merely being an insured, however, Dr. Crisp was a vice-president of MICA and a member of the MICA Board of Directors. *Id.* Dr. Crisp testified that, although not salaried, MICA compensated him for services rendered. *Id.* The *Barsema* Court, on these facts, concluded "the trial judge properly could have excluded evidence that Dr. Crisp was insured by MICA, but erred in precluding the introduction of evidence that Dr. Crisp was MICA's vice president and a member of its board of directors." *Id.* at 974.

Under similar facts and circumstances, the Alabama Supreme Court also adopted the connections test, rather than the *per se* rule enunciated in *Ede*. *See Otwell*, 497 So.2d at 114-115. The defendant doctor in *Otwell* was insured by the Mutual Assurance Society of Alabama (MASA). *Id.* at 113. Dr. Talbot, a witness for defendant, was also insured by MASA. *Id.* The trial court granted defendant's motion *in limine* thereby suppressing any reference to the commonality of malpractice carriers. *Id.*

The *Otwell* Court noted "that under certain circumstances a witness may have a sufficient degree of 'connection' with [defendant's] liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness." *Id.* at 114. The requisite connection was not established, however, by "[t]he coincidental fact that [Dr. Talbot] and the defendants are both insured by MASA . . . ." *Id.* Indeed, the Alabama Supreme Court made clear "that the witness must be an 'agent' of the insurer before interrogation about insurance coverage would be acceptable." *Id.* at 113. *See also Carrier*, 120 N.C. App. at 518-520, 463 S.E.2d at 396-397 (no error in

allowing cross-examination of witness about his employment with defendant's insurance carrier to show bias).

Notably, the *Otwell* Court relied on *Mendoza v. Varon*, 563 S.W.2d 646 (Tex. Civ. App. 1978). In *Mendoza*, as in *Barsema* and *Otwell*, plaintiff attempted to introduce evidence that defendant doctor and one of his expert witnesses were insured by the same malpractice insurance provider. *Id.* at 649. Recognizing the witness was merely a policyholder, the *Mendoza* Court found the witness' connection with the common insurance carrier was not sufficient to warrant proof of this relationship. *Id.* As the Court stated:

> the [expert] witness had no direct interest in the outcome of the litigation, as would an agent, owner or employee of the defendant's insurer. While it is true that a large judgment against any doctor will probably affect the insurance rates of other physicians, this interest is remote, and any proof of bias based upon that interest is outweighed by the prejudice caused by informing the jury of the defendant's insurance protection.

*Id.*

Likewise, in the present case, Warren was prepared to establish that two of Jackson's expert witnesses were biased because they were insured by Medical Mutual, Jackson's insurance carrier. We recognize policyholders in a mutual insurance company have, by its very nature, a greater financial stake in the company than do policyholders in other types of insurance companies. *See* N.C. Gen. Stat. § 58-8-1, *et seq.*; 3 RUSS, COUCH ON INSURANCE 3D § 39:15. Virtually every jurisdiction has nevertheless concluded mere policyholder status represents too attenuated a "connection" with an insurance company, mutual or otherwise, for the probative value of such evidence to outweigh the potential prejudice to the jury's deliberations. *See, e.g., Barsema*, 751 P.2d at 973; *Otwell*, 497 So.2d at 114. Therefore, the trial court did not abuse its discretion by granting Jackson's motion *in limine* thereby suppressing evidence that Jackson and two of his expert witnesses shared a common malpractice carrier, Medical Mutual.

Warren also asserts the connections test violates our Supreme Court's mandate that:

> [c]ross-examination of an opposing witness for the purpose of showing his bias or interest is a substantial legal right, which the trial judge can neither abrogate nor abridge to the prejudice of

JENKINS v. LAKE MONTONIA CLUB

[125 N.C. App. 102 (1997)]

the cross-examining party. A contrary rule would substitute the whim of the trial judge for the law of the land . . . [which should be uniformly applied].

*State v. Hart*, 239 N.C. 709, 711, 80 S.E.2d 901, 903 (1954) (citations omitted). Nonetheless, the connections test is, in fact, consistent with *Hart* because it safeguards the "substantial legal right" of a party to cross-examine an opposing witness regarding bias or prejudice, *id.*, yet also acknowledges the inherent authority, and duty, of a trial court to exclude evidence where the probative value is outweighed by the prejudice such evidence would introduce into the proceedings, *Willoughby v. Wilkins*, 65 N.C. App. 626, 638, 310 S.E.2d 90, 98 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 697 (1983), N.C. Gen. Stat. § 8C-1, Rule 403.

Accordingly, under the present facts and circumstances, the trial court did not abuse its discretion by granting Jackson's motion *in limine*.

No error.

Chief Judge ARNOLD and Judge EAGLES concur.