A01A1202. CHAMBERS v. GWINNETT COMMUNITY HOSPITAL, INC. et al.
(557 SE2d 412)

POPE, Presiding Judge.

Wenonah Chambers fell down a flight of stairs and was injured. The 75-year-old Chambers was treated at the Gwinnett Community Hospital, Inc. emergency room by Dr. Kamlesh Gandhi and released. After going home, Chambers suffered a subdural hematoma and lapsed into a coma; she regained consciousness, but was left blind and unable to walk. Chambers brought a medical malpractice action against the Hospital and Dr. Gandhi. The trial court granted summary judgment to the Hospital and the case against Dr. Gandhi went to trial, resulting in a defense verdict. Chambers now appeals. We find her enumerations of error without merit and affirm.

---

1. Chambers claims the trial court erred in excluding evidence that two defense experts were also policyholders in MAG Mutual Insurance Company. Chambers argues that, because Gandhi was also insured by MAG Mutual, the defense experts had a financial interest in the outcome of the case. Admission of evidence is "committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Punctuation omitted.) *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 457 (2) (543 SE2d 21) (2001).

We agree with Chambers that, as a general principle, the jury is entitled to consider a witness's financial interest in a case. See OCGA § 24-4-4; *Jordan v. Fowler*, 104 Ga. App. 824, 828-829 (5) (123 SE2d 334) (1961). However, it is also settled law that evidence of a litigant's insurance is generally inadmissible. See *Goins v. Glisson*, 163 Ga. App. 290, 292 (1) (292 SE2d 917) (1982). As our Supreme Court has recognized, the concern is that introducing evidence of a defendant's insurer could motivate a jury to award increased damages. *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42, n. 2 (402 SE2d 269) (1991). And although jurors could well surmise that a doctor has malpractice insurance, "the introduction of [the] evidence . . . tends to emphasize something that is usually irrelevant and that may have an adverse effect on the quality of the jury's deliberations and conclusions." *Barsema v. Susong*, 156 Ariz. 309, 313 (3) (751 P2d 969) (1988).

Chambers can only demonstrate the financial interest in the case of these expert witnesses by showing that any judgment would be paid by Dr. Gandhi's insurer. But this Court has held that a financial interest of a witness in a defendant's liability insurer is not "so much more material than prejudicial as to warrant admitting it in evidence." *Conley v. Gallup*, 213 Ga. App. 487, 488 (445 SE2d 275) (1994). Chambers argues that *Conley* is distinguishable because it does not expressly involve a "mutual" insurance policy. We recognize that in a mutual insurer "each policy-holder looks for indemnity against loss to the payments of each of the other policy-holders," *Carlton v. Southern Mut. Ins. Co.*, 72 Ga. 371, 389 (1884), but there was no showing that Chambers's experts had more than an inchoate and financially insignificant interest in the outcome of this particular case.

For example, there was no proffer as to the extent of any contingent liability of the members of MAG Mutual. Georgia law recognizes two types of mutual insurance policies. Under one type the members are liable pro rata for the discharge of the mutual company's obligations. OCGA § 33-14-68. But under the second type of policy, a nonassessable policy, the mutual insurance company may eliminate all the contingent liability of its members. OCGA § 33-14-71. The record is

silent as to what kind of mutual insurance policy exists in this case. Therefore, Chambers has not established that the experts had anything more than a de minimis financial interest at stake.

We find there must be a showing of a more substantial financial interest to warrant the introduction of evidence that Dr. Gandhi and the experts share the same insurance company. Most states have adopted a "substantial connection" test to determine when evidence of common liability coverage is permissible.[1] "Under [this] test, a plaintiff must be able to establish that an expert has more connection to a defendant's insurer than that of [a] policyholder, or[,] in the case of a mutual insurance company, membership." *Mills v. Grotheer*, 957 P2d 540, 543 (Okla. 1998). As one court noted, the connection of merely having a common insurance carrier is too attenuated to outweigh the potential prejudice from the admission of such evidence:

> We recognize policyholders in a mutual insurance company have, by its very nature, a greater financial stake in the company than do policyholders in other types of insurance companies. Virtually every jurisdiction has nevertheless concluded mere policyholder status represents too attenuated a "connection" with an insurance company, mutual or otherwise, for the probative value of such evidence to outweigh the potential prejudice to the jury's deliberations.

(Citations omitted.) *Warren v. Jackson*, 125 N.C. App. 96, 101 (479 SE2d 278) (1997). See also *Otwell v. Bryant*, 497 S2d 111, 115 (Ala. 1986) (the overwhelming prejudicial effect of allowing insurance evidence must be balanced against the "virtually non-existent" potential for bias from an expert's coverage under a professional liability policy).

Courts employing the substantial connection test have admitted insurance evidence where a witness has a significant connection, other than merely holding a policy, with the defendant's insurer. *Lombard v. Rohrbaugh*, 262 Va. 484 (551 SE2d 349) (2001) (evidence of expert's employment relationship with defendant's insurer admissible); *Yoho v. Thompson*, 345 S.C. 361, 366 (548 SE2d 584) (2001) (evidence that expert maintained an employment relationship with defendant's insurer admissible); *Bonser v. Shainholtz*, 3 P3d 422, 426 (Colo. 2000) (evidence admissible that expert was founder of trust insuring defendant, trust had only 1,500 members and adverse ver-

---

[1] See, e.g., *Yoho v. Thompson*, 345 S.C. 361, 366 (548 SE2d 584) (2001); *Bonser v. Shainholtz*, 3 P3d 422, 426 (Colo. 2000); *Mills v. Grotheer*, 957 P2d 540, 543 (Okla. 1998); *Warren v. Jackson*, 125 N.C. App. 96 (479 SE2d 278) (1997); *Otwell v. Bryant*, 497 S2d 111, 116 (Ala. 1986); *Mendoza v. Varon*, 563 SW2d 646, 649 (Tex. App. 1978).

dict could substantially affect expert's premiums); *Barsema*, 156 Ariz. at 314 (evidence expert was vice president and on board of directors of insurance company admissible). This approach comports with our decision in *Pavamani v. Cole*, 215 Ga. App. 594 (1) (451 SE2d 795) (1994), where we held that a party could cross-examine an opposing expert regarding his affiliation with a rival insurance company, where the expert was on the board of directors and several committees of that company.

Chambers directs our attention to authority in one jurisdiction holding that where an expert witness and the defendant share an interest in a mutual insurance company, such an interest is admissible. See *Ede v. Atrium South OB-GYN*, 71 Ohio St.3d 124, 128 (642 NE2d 365) (1994). But as the dissent acknowledges, this opinion reflects the minority view among the many states to have considered the issue.

We believe that Georgia law is in accord with the majority rule and the substantial connection test. Based upon our analysis of the applicable law and the facts of this case, we find that a party must demonstrate a more substantial connection than simply a common mutual insurance carrier to overcome the potentially prejudicial effect of introducing evidence of a defendant's insurance. Here, the evidence that the defendant's experts were merely insured by MAG Mutual was not more probative than prejudicial. See *Thomas v. Newnan Hosp.*, 185 Ga. App. 764, 766-767 (1) (365 SE2d 859) (1988). Accordingly, we find no manifest abuse of discretion by the trial court in excluding such evidence.

2. Chambers claims the trial court erred in refusing to allow Chambers's medical expert, Dr. Freedman, to testify as to whether a physician attending Chambers should have measured her prothombin time ("pro-time"), which tests the tendency of a patient's blood to clot. We disagree. Whether a witness has the experience necessary to testify as to what the standard of care requires under a particular set of circumstances is a matter within the sound discretion of the trial court, and such discretion will not be disturbed unless manifestly abused. *McDonald v. Glynn-Brunswick Mem. Hosp.*, 204 Ga. App. 7 (418 SE2d 393) (1992).

Dr. Freedman was cross-examined outside the presence of the jury:

Q: Are you familiar with the standard of care applicable to the treatment that Mrs. Chambers received in presenting to an emergency room, not to a hematologist, not to some other specialty, but in an emergency room setting? Can you testify what the standard of care is in that setting?
A: No, I cannot.

The trial court was authorized based upon this testimony to find that Dr. Freedman was not qualified to opine that the standard of care of an emergency room physician like Dr. Gandhi required the taking of Chambers's pro-time.

But even if the trial court erred in so ruling, no reversal was warranted. Dr. Freedman was allowed to testify concerning the importance of taking a pro-time, and another defense witness testified that the standard of care required Dr. Gandhi to obtain a pro-time. Error in excluding evidence is harmless where essentially the same evidence has been admitted and considered by the jury. *Platt v. Nat. Gen. Ins. Co.*, 205 Ga. App. 705, 710 (1) (c) (423 SE2d 387) (1992).

3. Chambers claims the trial court erred in admitting evidence of care given to Chambers after two previous falls. She argues that the actions of the two other doctors in treating Chambers are irrelevant to the issue of Dr. Gandhi's negligence in treating Chambers. Relevant evidence includes acts or circumstances which serve "to elucidate or throw light upon a material issue." *Dept. of Transp. v. Delta Machine Products Co.*, 157 Ga. App. 423, 426 (2) (278 SE2d 73) (1981). We find no abuse of discretion as evidence of Chambers's previous medical treatment could shed light upon the question of whether the applicable standard of care required the taking of the pro-time of elderly patients who have suffered injuries in a fall.

4. Chambers claims the trial court erred in failing to sustain her counsel's objections to a nonresponsive answer by expert witness Dr. Hartman. We have reviewed the testimony and find it responsive, if meandering. The trial court did not err in allowing it.

5. Chambers claims the trial court erred in granting the Hospital's motion for summary judgment. Because we have found that the judgment for Dr. Gandhi must be affirmed, and because Chambers alleges no independent negligence on the part of the Hospital, but bases her claim on the theories of respondeat superior and apparent agency, a judgment against the Hospital is not sustainable. Whether the trial court erred in granting summary judgment to the Hospital is therefore moot. "Nothing . . . shall require the appellate court to pass upon questions which are rendered moot." OCGA § 5-6-34 (d).

Chambers argues that because under *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432, 434 (1) (489 SE2d 153) (1997), collateral estoppel requires identity of parties, the defense verdict for Dr. Gandhi does not preclude Chambers from proceeding against the Hospital should we reverse the trial court's grant of summary judgment. She asserts that this is true even if the Hospital's liability remains dependent on a finding that Dr. Gandhi was negligent. But however narrowly *Wickliffe* may restrict the doctrine of collateral estoppel, that case involved separate, "collateral" actions. Chambers filed this action

against both the Hospital and Dr. Gandhi, and now that a jury has found for Dr. Gandhi, she cannot relitigate the issue of his negligence in the same action.

Chambers is also precluded from proceeding against the Hospital by principles applicable to her claims of respondeat superior and apparent agency. Under such claims, a decision in favor of the agent or servant precludes recovery against the master or employer:

> The rule that where the liability of the master to a third person is purely derivative and dependent entirely upon the principle of respondeat superior, a judgment on the merits in favor of the agent or servant is res judicata in favor of the principal or master, though he was not a party to the action, is an exemplification of the broader rule by which one whose liability is wholly derivative may claim the benefit of a judgment in favor of the person from whom his liability is derived.

(Citations and punctuation omitted.) *Porterfield v. Gilmer*, 132 Ga. App. 463, 465 (208 SE2d 295) (1974).

*Judgment affirmed. Andrews, P. J., Miller and Mikell, JJ., concur. Blackburn, C. J., Ruffin and Eldridge, JJ., dissent.*

BLACKBURN, Chief Judge, dissenting.

Because I believe that the trial court erred by excluding evidence that two defense experts had financial interests in the outcome of the case as policyholders in defendant's liability carrier, a mutual insurance company, I respectfully dissent.

In this medical malpractice action, Wenonah Chambers brought suit against Gwinnett Community Hospital, Inc. and Dr. Kamlesh Gandhi for the misdiagnosis of a subdural hematoma in her brain. During the ensuing trial, Gandhi called Dr. Joseph Brantwain and Dr. Cassandra Evans as expert witnesses to testify on his behalf. Gandhi, Brantwain, and Evans were all insured at the time by MAG Mutual Insurance Company. On cross-examination, the plaintiff wished to disclose the witnesses' financial interest in the outcome of the case to the jury. The trial court ruled that she could not do so, as it would inject the fact of insurance into the trial. This ruling was erroneous under the facts of this case.

The defense witnesses' financial interest in the case, based upon their also being an insured with defendant's liability carrier, a mutual insurance company, triggers two competing rules of evidence. The first, OCGA § 24-4-4, provides: "In determining where the preponderance of the evidence lies, the jury may consider . . . the witnesses' . . . interest or want of interest." The second, a common law

rule, provides that, *in general*, evidence of a litigant's insurance is inadmissible. *Goins v. Glisson.*[2] In light of these competing principles, the ultimate consideration concerns whether the evidence regarding insurance is of such a material nature as to outweigh any prejudicial value it may have in any given case. *Conley v. Gallup.*[3]

With a mutual insurance company like MAG Mutual, "each policy-holder looks for indemnity against loss to the payments of each of the other policy-holders." *Carlton v. Southern Mut. Ins. Co.*[4] Unlike policyholders in nonmutual insurance companies, a policyholder in a mutual insurance company has a significant financial stake in the company itself, and, due to the nature of mutual insurance, each policyholder would have a direct financial interest in the outcome of litigation brought against any other policyholder.

> A mutual insurance company is one that does not issue capital stock, so that "the policyholder has an interest in the assets of the company, usually realized by the way of dividends reducing the policy premium." *Weatherbee v. Hutcheson.*[5] See also *Patterson v. Lauderback*,[6] overruled on other grounds, *Warren v. Ballard*,[7] Black's Law Dictionary (6th ed.), p. 1021. However, these policyholders also may be liable for any judgment against the insurance company. *Patterson v. Lauderback*, supra.

*Wallace v. Swift Spinning Mills.*[8]

Because Gandhi's expert witnesses had a vested interest in the outcome of litigation against their fellow policyholder, the trial court should have allowed Chambers to inform the jury of this financial interest. Under Georgia law, we have previously determined that being a policyholder in a mutual insurance company creates a financial interest in common with any other policyholder in such company. See *Swift Spinning Mills*, supra.

Recognition of the special impartiality problems raised by the nature of mutual insurance is not new to Georgia jurisprudence. We have held that "[j]ury panelists with a relationship to an insurance company that has a demonstrable, direct financial interest as an insurer in the case, such as . . . policyholders of mutual insurance companies . . . may not be impartial and should be removed from the

[2] *Goins v. Glisson*, 163 Ga. App. 290, 292 (1) (292 SE2d 917) (1982).
[3] *Conley v. Gallup*, 213 Ga. App. 487 (445 SE2d 275) (1994).
[4] *Carlton v. Southern Mut. Ins. Co.*, 72 Ga. 371, 389 (1884).
[5] *Weatherbee v. Hutcheson*, 114 Ga. App. 761, 765 (1) (a) (152 SE2d 715) (1966).
[6] *Patterson v. Lauderback*, 211 Ga. App. 891, 895 (3) (440 SE2d 673) (1994).
[7] *Warren v. Ballard*, 266 Ga. 408, 410 (467 SE2d 891) (1996).
[8] *Wallace v. Swift Spinning Mills*, 236 Ga. App. 613, 614 (1), n. 2 (511 SE2d 904) (1999).

panel for cause." (Footnote omitted.) *Swift Spinning Mills*, supra at 614 (1). Based on the same rationale, defense experts who are policy-holders in the mutual insurance company insuring a defendant may not be impartial, and if they testify, the disclosure of their financial interest should not be barred.

We note that the defendant freely chose these experts with knowledge of their financial interest. Indeed, their financial interest might well have been a factor in their selection. These witnesses were opinion witnesses, not treating physicians or fact witnesses, and defendant could have selected disinterested experts. Plaintiff's general right to disclose the bias of a witness should not be affected by defendant's voluntary decision to select expert witnesses with a financial interest in the outcome of the case. This is so for the same reason that mutual policyholders would be excused for cause from any jury which would try the case. The reality in this case is that facts bearing on the credibility of the experts who testified on Gandhi's behalf were kept from the jury. Any prejudicial effect that the disclosure of the witnesses' interest might have was the result of defendant's choice of witnesses, and the materiality of this interest outweighs any prejudice that defendant has elected to inject into the trial.

General arguments that evidence of insurance coverage would unfairly prejudice the jury do not apply to freely selected expert witnesses who have a financial interest in the outcome of the case.

> [T]he trial court erred by grossly overestimating to what extent testimony that [Gandhi] was insured would prejudice the jury. . . . [T]estimony regarding insurance is not always prejudicial. However, too often courts have a Pavlovian response to insurance testimony — immediately assuming prejudice. It is naive to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. Our Rules of Evidence are designed with truth and fairness in mind; they do not require that courts should be blind to reality.

*Ede v. Atrium South OB-GYN.*[9]

The majority's reliance on *Conley v. Gallup*, supra, for its determination that the financial interest of the defense experts need not

---

[9] *Ede v. Atrium South OB-GYN*, 71 Ohio St.3d 124, 127 (642 NE2d 365) (1994).

be disclosed, is misplaced, as such case is not binding here. A reading of that opinion reveals that although MAG Mutual was involved, the court based its opinion on the general common law exclusion of insurance. That case did not address the insurance issue as it applies to mutual insurance, and, as such, it does not control the issue in this case. We note that cases from other jurisdictions are persuasive authority only and do not bind this court. While the majority opinion reflects the view of a majority of other jurisdictions, it is inconsistent with Georgia case law. Under current Georgia law, a witness would be struck from a jury for cause, because of his financial interest in the case, but could, under the majority's holding, testify before a jury without the disclosure thereof. The position outlined in this dissent would not allow such an incongruent result.

The majority points out that the record is silent as to whether the mutual insurance policy in this case is assessable or nonassessable, and it contends that the record contains insufficient evidence regarding the expert witnesses' financial interest in the outcome of Chambers' case. These deficiencies in the record result from the trial court's decision not to review the policy.

During the hearing regarding the experts' possible bias, the trial court stated that it might favor admissibility if it had more information regarding the experts' potential liability. Then, when Chambers offered to gather such evidence, the trial court refused, deciding instead to rule against admissibility without further fact gathering. While the trial court recognized the need to review the policy, it elected to rule without such review. Under these circumstances, the failure of the court to review the policy, at best, supports a remand of this case for further hearings. It also makes it clear that an affirmance of the trial court's ruling is inappropriate.

I would reverse the trial court's ruling.

I am authorized to state that Judge Ruffin and Judge Eldridge join in this dissent.

DECIDED NOVEMBER 28, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001 — .

*Joseph H. King, Jr.*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Earl W. Gunn, Ashley P. Nichols, Christopher H. Smith, Owen, Gleaton, Egan, Jones & Sweeney, Rolfe M. Martin, Amy J. Kolczak*, for appellees.

*Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Ashley R. House, Mark L. Stuckey*, amici curiae.