**Lynn C. SMITH, Individually and as Next Friend and Natural Daughter of Rosetta H. Williams, Plaintiff,**

**v.**

**AMERICAN TRANSITIONAL HOSPITALS, INC. d/b/a Select Specialty Hospital, Defendant.**

No. CIV.A.103–068.

United States District Court, S.D. Georgia, Augusta Division.

June 2, 2004.

Derek J. White, Derek White Law Firm, Savannah, GA, for Plaintiff.

F. Michael Taylor, James S.V. Weston, Hull, Towill, Norman, Barrett & Salley, Augusta, GA, for Defendant.

## ORDER

BOWEN, District Judge.

Before the Court in the captioned case are motions in limine filed by both parties. For the reasons stated below, Plaintiff's motion in limine is **DENIED**, and Defendant's motion in limine is **GRANTED**.

### I. Background

This medical malpractice action arises out of the death of Plaintiff's mother, Rosetta Williams. At the time of the alleged negligence, Williams was a patient in Defendant's hospital (Select Specialty Hospital), having suffered a myocardial infarction a few weeks prior thereto. In the early morning hours of July 9, 2000, the nursing staff found Williams out of bed on the floor.[1] Williams was unresponsive and not breathing and her tracheostomy tube had been removed. The nursing note indicates that Williams had pulled out the tube.[2] (Wiley Dep., Ex. 1.) This anoxic

---

1. The nurse that found Williams testified that she was not completely on the floor but was between the bed rails and halfway on the floor. (Wiley Dep. at 69.)

2. According to the medical records, Williams had pulled out various tubes on several prior occasions. (Vasta Aff. ¶¶ 9–16.)

event caused a brain injury from which Williams never regained consciousness. (Gutheim Dep. at 60.) She died on August 23, 2000.

In this case, Plaintiff claims that Defendant did not adhere to the applicable standard of care. In particular, Plaintiff claims that the nursing staff breached the standard of care by failing to place Williams in restraints [3] and failing to properly monitor her. (Pretrial Order at 5.) In support of this claim, Plaintiff filed the affidavit of Beverly Vasta, a registered nurse, with her amended complaint and identified her as an expert witness. (Am. Compl.Ex. A.) In the affidavit, Vasta generally states that "the nursing staff of Select Specialty Hospital ... failed to adhere to the standard of care generally employed under similar conditions or like circumstances by failing to adequately supervise and restrain Ms. Rosetta Williams." (Vasta Aff. ¶ 18.) In her deposition, however, Vasta testifies that she does not know the applicable standard of care, to wit:

Q: All right. But other than the nurse not being in her room from 11:30 till 12:08, in what other way did the staff at Select Specialty deviate from the standard of care that night?

A: I'm not sure that I can answer that because I'm not sure I know what the standard of care for this particular hospital is.

Q: Okay. Define for me standard of care, Ms. Vasta.

A: Standard of care would be following the policies and procedures of the particular facility.

Q: Okay. So each facility might have a different standard of care?

A: Each facility may have a standard of care, yes. There are general standards of care for nurses in general that are set aside or set forth by the State Board of Nursing.

Q: Did Select Specialty Hospital follow those general standards of care set forth by the State in the care and treatment of this patient?

A: As far as I can tell, yes.

Q: So, what you are saying is though you believe they may have deviated from some of their own policies and procedures, the staff at Select?

A: Possibly.

(Vasta Dep. at 59–60.) In responding to questions about monitoring Williams, Vasta also testified as follows:

Q: So, then, tell me, what is the standard of care in this situation?

A: It would again depend on the patient themselves, but I would think at least every thirty minutes.

Q: Is that what the standard of care is in this situation, every thirty minutes?

A: I would think that would be good nursing protocol.

Q: That would be good nursing?

A: Yes, sir.

Q: But it's not the standard of care?

A: I don't know what the standard of care for this facility would be.

(*Id.* at 77.)

With respect to causation, Vasta testified: "It seems from the record that on July the 8th when [Williams] pulled the trach out, it did result in injury." (*Id.* at 59.) She states in her affidavit that the failure of the nursing staff to adequately supervise and restrain Williams directly caused and contributed to Williams' injury. (Vasta Aff. ¶ 19.)

---

**3.** One nurse testified that Williams was wearing a Posey vest, which is a safety strap that helps keep a patient in bed, but she did not have on wrist restraints. (Wiley Dep. at 58–59.)

Presently, Defendant seeks to exclude Vasta's expert testimony as to the standard of care and proximate cause. Defendant contends Vasta is unqualified to give either opinion under Rule 702, Federal Rules of Evidence. In response to Defendant's motion in limine, Plaintiff filed a motion in limine to exclude the testimony of Cathy Green, Defendant's expert witness, who is also a registered nurse. Both motions are ripe for consideration.

## II. Defendant's Motion in Limine

■ Under Rule 702, Federal Rules of Evidence, the trial judge must assess the reliability and helpfulness of proffered expert testimony because scientific, technical or specialized knowledge will only be allowed if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999). The proffered expert testimony "must meet the legal as well as the substantive issues of the case." *Id.* at 1320.

■ In this diversity case, the law of Georgia as it pertains to medical malpractice actions is applicable. In Georgia, a plaintiff must show the following to prove a medical malpractice claim: "(1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." *Knight v. West Paces Ferry Hosp., Inc.*, 262 Ga.App. 220, 585 S.E.2d 104, 105 (2003) (citing *Zwiren v. Thomp-*

*son*, 276 Ga. 498, 578 S.E.2d 862 (2003)). Expert testimony is required to provide "a standard measure" to be used by the jury "in measuring the acts of a doctor to determine whether he exercised a reasonable degree of care and skill; [the jury is] not permitted to set up and use any arbitrary or artificial standard of measurement." *Hayes v. Brown*, 108 Ga.App. 360, 133 S.E.2d 102, 105 (1963). Accordingly, to prove medical malpractice in this case, Plaintiff must present competent expert testimony that Defendant's nursing staff breached the applicable standard of care and that this breach proximately caused the decedent's death. This requisite subsumes the burden of providing expert testimony as to what the applicable standard of care is.

■■ In this case, Plaintiff's expert admitted twice in her deposition that she did not know what the applicable standard of care is. Indeed, Vasta defines the standard of care as it relates to an individual facility, which misstates the law. The standard of care in a medical malpractice case like this one is measured to "that reasonable degree of care and skill ordinarily exercised by members of the nursing profession *generally under conditions and similar and surrounding circumstances,*"[4] not, as Vasta states, as measured by a particular facility's policies and procedures. In short, Vasta is not competent to testify as to the applicable standard of care or whether Defendant's nursing staff breached that standard of care because she does not know what the standard of care is. *See Chambers v. Gwinnett Comm. Hosp.*, 253 Ga.App. 25, 557 S.E.2d 412 (2001) (affirming exclusion of expert testimony because the expert did

---

4. *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 416 S.E.2d 127, 128 (1992) (emphasis added); *see also Hayes*, 133 S.E.2d at 104–05 ("The degree of care and skill required is that which, under similar conditions and like surrounding circumstances is ordinarily employed by the profession generally.").

not know what the applicable standard of care was); *McDonald v. Glynn–Brunswick Memorial Hosp.*, 204 Ga.App. 7, 418 S.E.2d 393 (1992).

Plaintiff responds to the motion in limine by (1) emphasizing Vasta's qualifications, experience and training as a registered nurse; (2) pointing out Vasta's affidavit in which she states a general standard of care; and (3) singling out a line of her deposition that she changed with the errata sheet.[5] First, Vasta's training and experience is simply not relevant to Defendant's contention that she does not know the standard of care in this case. Second, Vasta's affidavit does not rehabilitate her deposition testimony because it is simply a generalization. The expert testimony required to prove medical malpractice must be more detailed in order to assist the trier of fact in understanding what was reasonably required of the nursing staff that evening. Vasta's affidavit does not do this. It does not give any indication of exactly what was required of the nursing staff in order to satisfy their professional obligation to Williams. Finally, the errata sheet does not change the fact that Vasta twice unequivocally stated that she does not know what the standard of care is in this case. Also, while the errata sheet states that the nursing staff fell below the standard of care, it does not articulate what the standard of care is.

I must also note with concern other portions of Vasta's deposition testimony. Vasta testified that putting a patient in wrist restraints requires a doctor's order and that a nurse deviates from the standard of care if the orders are not followed.

(Vasta Dep. at 43–44.) She states that if the doctor does not place an order for restraints in the patient's chart, there is nothing a nurse can do about it. (*Id.* at 44.) Then, she admits that on the day in question, there was no order for restraints by a physician in Williams' chart. (*Id.* at 45.) Thus, it is difficult to imagine how the nursing staff, dependent upon a doctor's order, could be negligent for failing to use restraints in the absence of such order. At another point in the deposition, Vasta testifies that she did not have a problem with how often the nursing staff was seeing Williams on the day in question. (*Id.* at 54–55.) Thus, Vasta's claim of negligence in the staff's failure to monitor Williams is suspect.

In short, Vasta's testimony on the issue of standard of care, an essential element of a medical malpractice claim, will not assist the trier of fact in this case. Accordingly, Defendant's motion in limine to exclude Vasta's testimony on the applicable standard of care issue is **GRANTED**.

■ Plaintiff also offers Vasta on the element of proximate cause. In her affidavit, Vasta avers that "to a reasonable degree of nursing certainty" the deviations from the accepted standard of care directly caused or contributed to Williams' brain injury. (Vasta Aff. ¶ 19.) In her deposition, Vasta testified that it seemed from the medical record that the unrestrained Williams pulled the tracheostomy tube out and caused her injury. (Vasta Dep. at 59.)

■ The Georgia Supreme Court recently addressed a plaintiff's burden of proof on the element of proximate cause in a medical malpractice action:

**5.** In response to the motion in limine, Plaintiff also attaches a second affidavit of Vasta. This affidavit opines that the nursing staff failed to properly restrain Williams, which proximately caused her inability to breathe, but it does not state the applicable standard of care. In any

event, the affidavit constitutes an untimely expert report in violation of Federal Rule of Civil Procedure 26(a)(2) and this Court's scheduling order of June 10, 2003, and will not be considered.

In order for the plaintiff to show that the defendant's alleged negligence was the proximate cause of the plaintiff's injury, the plaintiff must present expert medical testimony. An expert's opinion on the issue of whether the defendant's alleged negligence caused the plaintiff's injury cannot be based on speculation or possibility. It must be based on reasonable medical probability or reasonable medical certainty.

*Zwiren*, 578 S.E.2d at 866.[6] A "bare possibility" that the alleged negligence resulted in injury is not enough. *Dowling v. Lopez*, 211 Ga.App. 578, 440 S.E.2d 205 (1993).

Having considered Plaintiff's testimony in this case, which is rather cursory and generalized on the issue of proximate cause, I find that Vasta's testimony offers little more than a reasonable possibility that Williams' ultimate death was proximately related to the alleged failure to have her in restraints.

■ Plaintiff counters that Vasta's testimony may be admissible, even though it is admittedly weak, if it is supported by other medical or non-medical evidence that, in totality, shows causation. *Estate of Patterson v. Fulton–DeKalb Hosp. Auth.*, 233 Ga.App. 706, 505 S.E.2d 232, 236 (1998). Vasta argues that the testimony of Dr. William Gutheim, the decedent's treating physician, enables her to clear the causation hurdle. Specifically, Plaintiff points to the following testimony:

Q: And anoxic encephalopathy—is that correct?

A: In terms of diagnosis of what she had suffered as a result of getting out of the restraints on the evening of July 8th, yes.

. . . .

Q: Is there anything in the medical chart that rules the removal of the trach—is there anything in the chart that rules that out as being a cause of her anoxic encephalopathy?

A: Not that I am aware of.

(Gutheim Dep. at 64–65.) This testimony supposedly shows that the nursing staff's alleged negligence, i.e., failing to put Williams in restraints, was the proximate cause of her death. However, Gutheim does not testify that Williams getting out of restraints is the result of any negligence. In fact, Gutheim had no criticisms of the nursing staff. (*Id.* at 59–60.) Further, Gutheim testified that Williams "could have had something else going on at the time" that caused the anoxic encephalopathy. (*Id.* at 66.) In short, this testimony does not provide strong supportive evidence necessary to allow Vasta's testimony on the issue of proximate cause. Accordingly, Defendant's motion in limine to exclude Vasta's testimony on the proximate cause issue is **GRANTED**.

### III.  Plaintiff's Motion in Limine

In response to Defendant's motion in limine, Plaintiff moved to exclude the testimony of Cathy Green, a registered nurse proffered by the defense. Plaintiff argues that Green does not know the standard of care for providing nursing care and points to specific deposition testimony.

Motions in limine in this case were due to be filed ten (10) days prior to pretrial

---

**6.**  Defendant argues that this burden requires "physician" testimony. Indeed, Plaintiff's counsel conceded at the pretrial conference that a nurse's testimony cannot establish proximate cause in the case. (Pretrial Conf. Tr. at 6.) I have not found any Georgia authority for the proposition that a "physician" must testify as to proximate cause in all medi-cal malpractice cases. Nevertheless, it would be a stretch to find a registered nurse qualified to explain *medically* how the negligence of Defendant's nursing staff proximately caused Williams' injury and death because she is not qualified to speak to the medical cause of the injury.

conference. Order of Dec. 22, 2003; *see also* Local Rule 7.4 ("Unless otherwise directed, motions in limine shall be filed no later than five (5) days prior to the pretrial conference, if practicable; otherwise, such motions may be filed up to the time of trial.") There was no reason that Plaintiff's motion could not have been filed in that time frame. Indeed, Plaintiff admits that her motion is tit for tat for Defendant's motion. (Pl.'s Reply Brf. at 2 ("[I]t was practical to file it once the issue of expert testimony was placed before this Court by defendant's Motion in Limine to Exclude plaintiff's expert.").) For this reason, Plaintiff's motion in limine is **DENIED** as untimely and without merit.

## IV. Conclusion

Upon the foregoing, Plaintiff's motion in limine [Doc. No. 19] is **DENIED**, and Defendant's motion in limine [Doc. No. 27] is **GRANTED**.