Reininger-Severin v. Hardy, No. S0015-03 CnC  (Norton, J., June 30, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                          SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S0015-03 CnC

REININGER- SEVERIN

v.

HARDY

ENTRY

Defendant Dentist moves in limine to prevent Plaintiff Patient from introducing evidence to show that Dentist's two expert witnesses are insured by the same insurance company as he is.  Patient's evidence is about the Oral and Maxillofacial Surgeons National Insurance Company (OMSNIC), which is an Oral and Maxillofacial Surgeon owned-and-operated malpractice carrier.  All doctors covered by this company are owners as they must purchase shares, which have produced a profit since

1989.

In addition to being shareholders in OMSNIC, the experts have often worked for the company testifying in dental malpractice cases. Patient argues that this shows that these witnesses are biased because a verdict for her could negatively impact the bottom line for their carrier diminishing their share value and profit and potentially raising their premiums. She seeks to use this evidence for impeachment purposes.

The question of whether evidence of liability insurance is admissible begins with V.R.E. Rule 411, which states:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, [sic] or control, or bias or prejudice of a witness.

Rule 411 derives from the common law, which in Vermont, like most states, cautioned against the admission of evidence showing that a party was insured for the purpose of fault. E.g., <u>Joslin v. Griffith</u>, 125 Vt. 104, 105 (1965); see also V.R.E. 411, rptr.n. At the same time Rule 411 and common law cases like <u>Joslin</u> have long recognized several exceptions to this prohibition, including the present proposed use as impeachment evidence of witness bias, which is rooted in the broad right to impeach a witness. <u>Joslin</u>, 125 Vt. at 105 (citing <u>Raymond's Adm'x v. Rutland Ry., Light & Power Co.</u>, 90 Vt. 373, 377–78 (1916)).

To understand how this exception fits, it is best to begin with the purpose of 411. For the <u>Joslin</u> court, the concern began with the undue

prejudice flowing from such evidence. Id. at 105. This point raises two concerns. Prejudice comes from either a jury taking proof of insurance as independent evidence of a party's fault or enlarging its award because they know that the insured defendant will not have to pay. Although these concerns have been widely questioned and challenged, they remain, at least under Joslin, valid considerations in any admission about a liability insurance carrier. Compare 23 C. Wright & K. Graham, Federal Practice & Procedure § 5362 (1980, Supp. 2003) (lambasting the prejudice arguments behind Rule 411), with Joslin, 125 Vt. at 106 (rejecting, at least in part, Professor Wigmore's suggestion that a Rule 411 violation is a non-reversible error). Joslin is also concerned about the conceptual problem of mixing insurance with a tort issues. Id. at 05–06. The Court writes:

> [W]hen an attempt is made to treat the presence of insurance as a fact of independent relevance like "any other piece of evidence," complications almost immediately arise. . . . If the insurer is the real party, do his defenses against his insured, with respect to being obliged to pay any judgment, become relevant, also? Should the limits of coverage be an issue? . . . Answering these questions in the context of a jury trial could be so involved and time-consuming as to quite overwhelm and obscure the true tort issues of fault and damage.

Id. Thus, a secondary concern exists requiring a court to scrutinize proposed evidence for a tendency to confuse or mislead a jury away from the central tort issues of fault and damage that outstrips its usefulness.

Given these underlying policy reasons against admitting evidence that a party is insured, the question becomes: Why is there an exception to show bias or prejudice in a witness? The answer is simply that the inquiry is "permitted, despite possible prejudice to the insurer, in order to eliminate

the distortions of bias in the determination of questions of fact." 23 Wright & Graham, at § 5367. The exception for this line of cross-examination is rooted in the broad right of parties to challenge the credibility of witnesses, including any economic biases or prejudices they may have. V.R.E. 611(b). Rule 411, in this way, allows for evidence of insurance coverage if it is serving a broader, legitimate trial court function.

In legitimate Rule 411 cases, the fact that the defendant has insurance is not the primary issue and is not asserted to prove any ultimate question of liability, but because it is a link between the expert witness and the defendant, its inclusion may cause a jury to question or look more critically at the expert's conclusions. Rather than creating independent relevance, evidence of insurance coverage to impeach has a relevance that is dependant on an evidentiary foundation to show that evidence of insurance coverage creates a connection between a witness and the defendant that would tend to show bias or prejudice.

To implement this line between admissible evidence of insurance coverage that serves a legitimate trial purpose and inadmissible evidence of only independent relevance, courts have adopted a "substantial connection" test. Under this test, a court must examine the nature of the witness's relationship to the insurance company and weed out proffers of insurance coverage based on weak or non-existent relationships that are mere pretext for putting evidence of insurance before the jury from those that plausibly suggest a reason for bias or prejudice. E.g., Vasquez v. Rocco, 836 A.2d 1158, 1163–64 (Conn. 2003); Yoho v. Thompson, 548 S.E.2d 584, 586 (S.C. 2001); Chambers v. Gwinnett Comm. Hosp., Inc., 557 S.E.2d 412, 417 (Ga. App. 2001); Bonser v. Shainholtz, 3 P.3d 422, 425 (Colo. 2000)

(collecting cases); <u>Mills v. Grotheer</u>, 957 P.2d 540, 543 (Okla. 1998).[1] While Vermont has not officially adopted this test, it appears to be in line with both V.R.E. 411 and the policies of <u>Joslin</u>. As well, the test provides an additional opportunity to balance the probative use of such evidence against its likely prejudicial effect in a way similar to Rule 403. <u>Vasquez</u>, 836 A.2d at 1163–64; <u>Bonser</u>, 3 P.3d at 424–25.

Patient's use of insurance coverage evidence involves three points. First, defendant and his expert witnesses are all shareholders in a fairly small (4,000 share/policyholders nationwide) insurance co-operative that only insures Oral and Maxillofacial surgeons. They also have a common benefit in sharing profits from the stock. Second, at least one of the expert witnesses practices in this region and would be impacted by any rise in rates. Third, both of the experts are professional witnesses for OMSNIC, having testified in over 20 cases over the last five years for $100,000 in compensation.[2]

---

[1] While a majority of jurisdictions have not ruled on this issue, the substantial connection test has been adopted in nearly every state that has considered this question. In fact, Ohio is the only state with a different standard. <u>Ede v. Atrium South OB-GYN, Inc.</u>, 642 N.E.2d 365, 368 (Ohio 1994) (applying a per se admissible rule to using liability insurance to impeach expert witnesses).

[2] Dentist's counter-argument that 80% of oral and maxillofacial surgeons belong to OMSNIC does nothing to blunt these points. As difficult as it might be to find a dental expert who was not a member of OMSNIC, Patient's main point is that the experts here are OMSNIC shareholders with a putative economic interest in the outcome and its effect on their rates, profits, and share values. It is irrelevant whether this bias affects one or every member of OMSNIC as it does not prevent shareholders from testifying but would merely subjects them to a

To Patient's second point, she presents no evidence as to how OMSNIC controls its rates. Instead, she relies on accusations and inferences that link the possibility that an adverse verdict might force rates up for the region. This point is somewhat dubious. It would, at the very least, require more foundational evidence. Patient's use of OMSNIC's annual report in this respect is inappropriate as it raises too many collateral and prejudicial issues. It also fails to answer the relevant question here: Are experts subject to (and thereby motived by) rate increases that come from larger jury verdicts in their area? Mere arguments and legislative studies will not show this to be true or untrue.

Of Patient's two remaining points, neither one is enough to create a substantial connection. The fact that the experts are share/policyholders in OMSNIC has been held by several in several jurisdictions to fall short of a substantial connection. See, e.g., Chambers, 557 S.E.2d at 416; Golden v. Kishwaukee Comm. Health Serv. Ctr. Inc., 645 N.E.2d 319, 325 (Ill. App. 1994) (exclusion based on common policy proper except for witness who "performed significant economic services"); cf. Kelley v. Wiggins, 724 S.W.2d 443 446–47 (Ark. 1987) (evidence of common insurer appropriate during trial "already permeated with the presence of two insurer defendants"). As the Chambers court wrote:

> We recognize policyholders in a mutual insurance company have, by its very nature, a greater financial stake in the company than do policyholders in other types of insurance companies. Virtually every jurisdiction has nevertheless concluded mere policyholder status represents too attenuated a "connection" with an insurance company, mutual or otherwise, for the probative value of such

legitimate source of impeachment.

evidence to outweigh the potential prejudice to the jury's deliberations.

557 S.E.2d at 416.

The expert witnesses here are shareholders, but really they are merely policyholders with a slightly elevated interest through the profit sharing component. Neither, however, have been shown to have significant shares or any particular interest in OMSNIC's finances. Nor has Patient shown how an adverse verdict would affect the profit margin of the company since it does have available reserves outside its net profit margin to make payments on the 7% of trials that it loses and for the untold number of settlements. While a good outcome in this case might increase OMSNIC's yearly profits, it also might have no effect.

To argue that Dentist's experts are motivated by this is speculative and fails to demonstrate a connection. Cf. Bonser, 3 P.3d at 426 (admitting evidence to impeach the founder of an insurance trust where a verdict could substantially affect premiums). While experts' testimony may indeed be motivated by increasing their bottom-line, the lack of a substantial connection means that this must be balanced against the strong prejudice and confusion that evidence about insurance would create. Without a more direct relationship, Patient's connection is simply too weak to overcome the prejudice inherent in raising insurance issues.

Patient tries to build up that connection in her final point concerning the experts' history of working with OMSNIC. Again, this is not simply not enough for a substantial connection. The experts are merely independent contractors that OMSNIC has relied on several times for expert testimony. This relationship does not necessarily create bias.

> [T]here is a vast difference between the probable bias or interest of an independent contracting doctor and medical witness who is shown to have been employed by and paid by the litigant offering his testimony, and that of such a witness who, in addition to his ordinary fees, is entrusted with the economic affairs of an insurance carrier for the defendant and has a consequent direct interest in the outcome of the litigation."

Barton Plumbing Co. v. Johnson, 285 S.W.2d 780, 781 (Tex. App. 1955). This view has also been adopted by several jurisdictions. See, e.g., Yoho, 548 S.E.2d at 586 (finding that expert's ongoing consulting with insurance company was an employment relationship and a substantial connection); Strain v. Heinssen, 434 N.W.2d 640, 643 (Iowa 1989) (mere payment by insurance company in exchange for expert's testimony at trial not probative enough to outweigh prejudice absent an agency or employment relationship).

In conjunction, other substantial factor cases have emphasized the need for employment, control, or a managing interest to create a direct connection with the insurance company. See Chambers, 557 S.E.2d at 416 (emphasizing the employment–management connection expert witnesses had with their insurance companies in other cases); Mills, 957 P.2d at 543 (citing three types of direct relationships between witnesses and insurance companies). This is what courts mean by a substantial factor. It must be more than just a connection that links the expert to the insurance company or give him some diluted interest in the outcome. Expert's employment must come into play, or plaintiff must be able to demonstrate that the expert or the insurance company wields some management control over the other.

This is not to say that Patient may not cross-examine the experts

about their extensive work as defense witnesses and the compensation they have received.  That evidence is certainly fair game for Patient's cross-examination but in an insurance neutral context.  But it would be inappropriate and needless prejudice to do this in the context of an insurance carrier.  See, e.g., <u>Cerasuoli v. Brevetti</u>, 560 N.Y.S.2d 468, 470 (1990) (permitting plaintiffs to show witness' prior medical services for law firms balanced right to attack credibility with prejudicial effect of introducing fact of defendant's insurance coverage).  Patient can adequately cross-examine her witnesses without going into which carrier employed them and the prejudice that insurance testimony would create.

Based on the foregoing, Defendant Dentist's motion in limine is Granted.

Dated at Burlington, Vermont_____, 2005.

_____
Judge